CASE 74.—ACTION BY SUSAN TEAGUE AGAINST THE WESTERN UNION TELEGRAPH COMPANY FOR FAILURE TO DELIVER A DEATH TELEGRAM.—Sept. 30, 1909.

# Western Union Tel. Co. v. Teague

Appeal from Jefferson Circuit Court (Common Pleas Branch, Second Division).

Thos. R. Gordon, Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Witnesses—Examination—Leading Questions.—In an action against a telegraph company for failing to deliver a message whereby plaintiff was prevented from attending her sister's funeral, that a question asked plaintiff whether she experienced any suffering and sorrow from being prevented from attending the funeral was leading was not ground for its exclusion; it being the last of many questions, and plaintiff's age and ignorance making it difficult for her to understand what she was being interrogated about.

2. Trial—Province of Court and Jury.—Where the facts are undisputed, and but one legitimate inference can be drawn from them, the court, and not the jury, should determine their effect.

3. Telegraphs and Telephones—Failure to Deliver Message—Measure of Damage.—Where defendant telegraph company negligently failed to deliver to plaintiff a message announcing her sister's death, and the hour of the funeral, plaintiff was entitled to such damages as would reasonably and fairly compensate her for mental anguish, if any, resulting from her being deprived of attending the funeral, not exceeding the amount claimed in the petition.

RICHARDS & RONALD and A. B. BENSINGER for appellant.

CAMPBELL & YOUNG and O'NEAL & O'NEAL for appellee. No briefs—record out of office.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Mrs. Nicie McCoy died on the afternoon of September 25, 1907, in the city of Louisville. About an hour after her death her son, A. H. C. McCoy, delivered to an agent and operator of the appellant, Western Union Telegraph Company, at its chief office in the city of Louisville, for transmission and delivery to the appellee, Mrs. Susan Teague, a sister of deceased, then residing at New Market, Ala., the following telegram:

"Mrs. Susan Teague, New Market, Alabama. Nicie passed away today. Interment in Huntsville Monday afternoon. Will pass through New Market at noon. Relatives and friends invited. Notify them. A. H. C. McCoy."

The sender of the telegram prepaid to appellant's Louisville agent the charges for its transmission and delivery. The telegram was never delivered to appellee, and she did not attend the burial of deceased, or receive information of her death, or the place of her burial, in time to do so. Thereafter appellee instituted this action against appellant in the court below, claiming damages for the mental suffering alleged to have been caused her by the nondelivery of the telegram; it being, in substance, alleged in the petition that the failure of appellant to deliver it prevented her from being advised of the death and of the time and place of her sister's burial, and that, if the telegram had been delivered according to the con-

tract and undertaking of appellant with the sender, it would have notified her of the death of her sister and of the time and place of the latter's interment in time for her to have been present, and that she could and would have done so.

The averments of the petition were traversed by appellant's answer and the trial resulted in a verdict and judgment in appellee's behalf for $500 damages. Appellant complains of the judgment and of the refusal of the circuit court to grant it a new trial.

By the evidence introduced in her behalf appellee sustained every averment of her petition essential to a recovery. That is to say, it established the facts: (1) That the telegram was delivered by the sender to appellant's agent for transmission and delivery to appellee on the afternoon of Saturday, September 25, 1907, and the charge therefor then paid. (2) That it was never received by appellee, but should have been received by her on the following morning (Sunday), or in any event by noon Monday, September 27, the day of the sister's burial at Huntsville, Ala., and that, if received as late as noon Monday, appellee was able to go and could have gone on the train containing her sister's remains from New Market to Huntsville, and thereby have attended the burial, and would have done so. (3) That the nondelivery of the telegram prevented appellee from receiving information of her sister's death, or of the time and place of her burial, in time to attend the burial, thereby causing her mental anguish and sorrow. Appellant did not attempt to prove a delivery of the telegram to appellee; and, though its Louisville agent and operator admitted receiving the telegram from the sender September 25th, and the payment by the latter of the cost of its transmission, he made no explanation as to its nondelivery

further than to say that it reached Atlanta, Ga., on its way to appellee, but offered no excuse for the failure of appellant's agent in that city to forward it to appellee at New Market, Ala.

It appears from the evidence that New Market is 18 miles from Huntsville, Ala., and that the train upon which Mrs. McCoy's remains were carried to Huntsville passed New Market at 1:30 p. m. Monday, September 27, 1907, the time the telegram in question indicated it would do so; that about an hour was required for the train to run from New Market to Huntsville, and that it arrived at the latter place about 2:30 p. m., and it further appears from the evidence that the interment of the body of Mrs. McCoy at Huntsville occurred at 3 p. m. It was also shown by the testimony of appellee, and at least two of her relatives residing at New Market, that she was a resident of and well known in New Market; that she was at her home on Saturday, Sunday, and Monday, September 25th, 26th, and 27th, and that appellant has, and then had, a telegraph office in New Market. She and the relations in question also testified that she nor they did not hear of the death of Mrs. McCoy before the arrival at New Market of the train containing the remains of the latter; that, upon the arrival there of the train, a son of the deceased, who alighted from it to the railroad platform, expecting to meet appellee and other relatives of his mother and to see them take the train for Huntsville to attend the burial, communicated to appellee's nephew, Rogers, who happened to be on the railroad platform, the first information received at New Market of the death of Mrs. McCoy; that Rogers, who was without his coat, in order to learn the particulars of her death, then got upon the train and rode to the next station,

returning to New Market in a short time on another train, and appellee did not and could not learn of the death of Mrs. McCoy until shortly after the train bearing her remains left New Market, or know the particulars of her death or that her burial would take place at Huntsville until her nephew returned from the station next to New Market.

According to the evidence, no other train following the one bearing Mrs. McCoy's remains ran that day from New Market to Huntsville until 8 p. m., and the distance was too great to make the trip in an ordinary vehicle. It is certain, therefore, that appellee could not, after being thus informed of her sister's death, have gotten to Huntsville in time for the interment. But it appears from her testimony and that of her New Market relatives that if appellant had delivered her the telegram intended to inform her of her sister's death at noon, or as late as 1 p. m., on Monday, September 27th, she could even on so brief a notice have gotten ready and reached the railroad station by 1:30 p. m., the time of the arrival of the train bearing the remains, and by taking it have been present at the burial. The evidence establishing the foregoing facts was uncontradicted, in view of which there was no way for appellant to escape liability for its failure to deliver the telegram. Its negligence was manifest; and the only real question to be determined by the jury was the amount of appellee's damages.

We have not overlooked appellant's contention that whatever mental suffering appellee sustained was caused by the death of her sister, and not because of her inability to attend the burial. But we do not understand appellee's testimony on that question as it seems to be understood by appellant's coun-

sel. It is true that her statements manifest some confusion of mind on the subject, arising, no doubt, from her ignorance of the legal distinction between mental suffering naturally resulting from her sister's death and mental suffering resulting from her inability to attend the sister's funeral, caused by the failure of appellant to deliver the telegram, yet, on the whole, her testimony sufficiently shows such mental suffering as must be regarded as flowing from the latter cause; for, after various questions and answers, interspersed with objections from opposing counsel and explanations from the court, appellee did say when finally asked whether she experienced any ''suffering and sorrow'' from being prevented from attending the funeral of her sister, ''yes, sir.'' While the question if first put in that form might have been regarded as leading, as it was the last of many, and her age and ignorance made it difficult for her to understand what she was being interrogated about, we are not inclined to hold that it should have been excluded on that ground. Besides, it is not wide of the mark to say that the conclusion contained in the answer of appellee to the question referred to but expresses what the law naturally implies, that mental anguish in case of such a relationship as she sustained to the deceased will follow the deprivation of the privilege to attend the burial of the latter, where such deprivation resulted solely from the negligence of appellant.

We find no merit in the objection urged by appellant's counsel to instruction No. 1 given by the trial court. But two instructions were given, and they are as follows:

''(1) It was the duty of the defendant, the Western Union Telegraph Company, to deliver the mes-

sage with reasonable promptness at New Market, Ala., to plaintiff which had been delivered to it at Louisville, Ky., and the court instructs you that the defendant, the Western Union Telegraph Company, negligently failed to deliver the telegram in a reasonable time, and the law of this case is for the plaintiff, and you should so find.

"(2) I further instruct you that, in finding for the plaintiff, you will award to her such damages as you believe from the evidence will reasonably and fairly compensate her for her mental pain and anguish, if any, caused by her failing to receive the telegram and caused by her being thereby deprived of attending the funeral services of her sister, the deceased, Mrs. McCoy, not to exceed the sum of $2,000, the amount claimed in the petition. In estimating the damages, gentlemen, the court instructs you that you should not consider or award any damages for the mental pain and suffering and distress which naturally resulted from the death of her sister, your finding to be limited to such mental suffering and distress as resulted from her failure to attend the funeral services of her sister, resulting from the failure to deliver the telegram."

The criticism upon the first instruction is that it assumes as true the facts essential to appellee's right to recover, and takes from the jury the right to pass upon them. This is true, but it must not be overlooked that every fact assumed in the instruction is a matter of evidence uncontroverted, for appellant offered no evidence to disprove them, or to establish other facts that would have put the facts assumed by the instruction in issue. It is a well known rule of law that where the facts of a case are undisputed, and but one legitimate inference can be drawn from

them, the court, and not the jury, should determine their effect. Jones on Telegraph & Telephone Companies, Secs. 487-513; L. & N. R. Co.. v. Earle's Adm'rx, 94 Ky. 374, 22 S. W. 607; 15 R. 184; L. & N. R. R. Co. v. Morris, 20 S. W. 539, 14 Ky. Law Rep. 466; Thompson v. Brannin, 40 S. W. 914, 19 Ky. Law Rep. 454.

We do not understand that instruction 2 is objected to. At any rate, it correctly presented the measure of damages, and was therefore necessary.

The record being free from substantial error, the judgment is affirmed.