# Kennedy Transfer Company v. Greenfield's Adm'x.

(Decided April 25, 1933.)

BLAKEY, DAVIS & LEWIS, COLEMAN TAYLOR, J. A. Mc-
KENZIE and G. SAMUEL MILAM for appellant.

SELDEN Y. TRIMBLE for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The appeal is from a judgment for $8,000 recovered
by the administratrix of Charles F. Greenfield, de-
ceased, on account of his death in a collision between an
automobile in which he was riding and a truck belong-

ing to the appellant. The accident occurred on a bridge near the village of Fairview on September 23, 1930.

1. One of the defenses was a settlement pleaded in bar of the action. We state the substance of that plea: The deceased was survived by his widow, Nellie Greenfield, his father, and mother, Lida Greenfield. On December 9, 1930, the mother qualified as administratrix in Todd county. On that day the defendant and his insurer made a settlement with her and paid her $200 in satisfaction of all claims for damages arising out of the death of the deceased. The widow (who brought this suit as administratrix), it is alleged, directed her to qualify as administratrix and to sue the defendant. Thereby, it is said, the plaintiff had led the defendant and the judge of the Todd county court to believe that the deceased was a citizen and resident of that county. Acting upon that representation, the mother had qualified and the settlement had been made. By reason of this the plaintiff in this action was estopped from denying the jurisdiction of the Todd county court. It was further alleged that the widow, as the sole beneficiary of any recovery, had assigned and given her claim to the mother, and with her consent and acquiescence she had collected it. It was alleged also that the mother was the agent of the widow in making that settlement. It was further averred that to permit the prosecution of this action would be to permit the plaintiff to perpetrate a fraud upon the defendant and his insurer. Finally, it was stated that the settlement and compromise had been made before the plaintiff had attempted to qualify as administratrix in Fayette county. The answer was made a cross-petition against Nellie Greenfield, the widow, as an individual. A demurrer being sustained to that part of the answer outlined, an amendment was filed setting up a letter written by the plaintiff to her mother-in-law on December 1, 1930, which it is alleged appointed her as her agent to collect the damages claimed. The letter indulges in some memories of the dead husband and other personal matters. The only part which tends to support the pleading is this:

"It is all right with me for you to sue with Ben Adams for you are there where you can find out whose fault it was and there where you can attend to everything, and I sure wish you much success."

Then it is alleged that on January 9, 1931, which was after the alleged settlement, the widow ratified the action of the mother by these words, in a letter of that date, namely:

"I sure wish you all the luck and success in getting that money from the company regardless of how much or how little you get would never pay us enough for taking our darling away from us."

This pleading contained a prayer that the case be transferred to equity for a trial of the equitable issues thus presented, and that the settlement be adjudged binding on the plaintiff, as administratrix and individually.

The affirmative allegations of this answer and cross-petition as amended were controverted of record. Nothing developed on the trial in relation to all of this, except there was conclusive proof that the deceased was a resident of Fayette county at the time of his death, and had been visiting his mother in Todd county about ten days when he was killed. By the pleadings and the evidence, it was shown that the widow had qualified as administratrix in the Fayette county court before the attempted qualification of the mother in Todd county. While there was no demurrer to the answer and cross-petition as amended, the practice of the case indicates that the parties regarded it as having been filed and sustained. At least the motion to transfer to equity was not acted upon. Counsel have favored us with very interesting and learned briefs upon the legal subjects suggested by the pleading above outlined, but we deem it unnecessary to discuss them here, for all points must rest in the final conclusion upon the construction to be put upon the quoted extracts from the letters. We cannot see in them anything to support the pleading. The exhibit contradicts the allegations, and the demurrer should have been sustained. Hence the point as to the failure of the court to transfer the case and hear the equitable issues raised must be denied.

2. The accident was in the early evening when it was dark and rainy. The road is straight for about a hundred yards on either side of the bridge where it occurred. It then curves at each end toward the south. The bridge is 17 feet wide and about 30 feet long, and has heavy concrete balustrades.

The deceased and his companion, Ben Adams, were traveling west towards Hopkinsville in a "Whippet"

coupe, which is described as being one of the smallest and lightest automobiles manufactured. The defendant's truck was traveling east toward Elkton. It weighed about 7,000 pounds net, and carried a large box-car body. The evidence of Adams is that the truck approached at a rapid speed and with only the right-hand light burning; that it came in the middle or to the left of the center of the road; that they saw the light of the truck perhaps 250 yards away; that just before the collision the deceased exclaimed, "Is he going to cut over?" and put on his brakes. The deceased's car was on the right-hand side of the road. A number of witnesses testified that immediately after the collision the truck was crossway of the bridge; its right front was against the south railing; most of its body was outside of the west line of the bridge; the rear end protruded beyond the center of the road, and was from 1 to 4 feet from the line of the north railing extended. The front of the "Whippet" car, particularly the left corner, was jammed against and wedged under the front left side of the truck and crushed to pieces. It would seem from this physical fact that it hit the truck. Its rear end was over against the north bridge railing. Although there was evidence that the wheels of the truck had skidded on the right side of the road just outside the bridge floor, showing it was where it should have been immediately before the collision, the positions of the wrecked cars would indicate that part of the truck was on the wrong side of the road when the collision occurred and was veering to the right at the moment. It was also proven by the defendant that there was some damage to the right side of the body of the truck and some paint and scratches on the south bridge balustrade which had apparently been made by the truck body rubbing against it, and this would show that the truck went into the bridge as far to the right of the road as it was possible to get. There were some marks on the road that indicate that the rear wheels of the truck had been knocked beyond the center of the road. The plaintiff's evidence in explanation of all this is that, in order to make way for traffic, the rear end of the truck had been shoved from the left of the road to the right and against the south bridge railing. It was scraped when it was removed by the wrecker. This tends to explain the marking on the balustrade and the slight damage to the right side of the truck.

It is argued that it was impossible for the little automobile to have knocked the heavy truck around in that way.

The driver of the truck testified that both its headlights were burning at the time of the accident, and that a governor prevented a speed faster than 33 miles an hour. He saw the other car approaching, possibly a hundred yards away, and it was running at a speed of 50 or 55 miles. He began to slow down his truck about 20 yards from the bridge, and entered it running not over 10 miles an hour. He also testified that he saw that the other car was going to hit him because it was on the wrong side of the road and was coming straight into him. He put on his brakes, and was not going over 6 or 7 miles an hour when the collision occurred. His truck was so far to the right that it rubbed against the bridge balustrade. Although moving so slowly, as the witness says, he admits that the man on the seat beside him was thrown clear through the windshield, prone into the road, when the big truck was struck by the little "Whippet." There was some evidence tending to show that both Greenfield and Adams had been drinking, but this is denied.

There is other evidence in the record, but the foregoing is a summary of most of the material.

In the argument that the verdict is not sustained by the evidence, it is not very ardently claimed that the letter of the testimony is insufficient, but emphasis is laid upon what counsel regards as the incredulous or improbable story related by Adams, the companion of the deceased, particularly as to the speed of the truck and the facts he related in reference to its approach and some other apparent inconsistencies. The jury chose to accept Adams' version and the circumstances tending to corroborate him rather than the evidence of a similar kind introduced by the defendant. The conflicting evidence made the case one for the jury to decide, and it cannot be held that the decision is unwarranted.

3. It is also claimed that a peremptory instruction should have been given because there was no proof that the truck was owned by the defendant or that the driver was employed by him or was acting within the scope of any employment. When the plaintiff rested, several

witnesses had testified that the truck was the defendant's. It had the name under which he did business painted on the sides. These statements were not questioned, nor was there any cross-examination to test the knowledge of the witnesses. The defendant went quickly to the scene of the accident. It is true that up to that time nothing had been said about the driver or his agency. But the defendant did not rest upon his motion for a peremptory. He testified to facts clearly showing that the driver was his employee and was acting within the scope of his employment. This supplied the omission and cured whatever error there may have been in overruling the motion for a peremptory instruction at the close of plaintiff's evidence, for the plaintiff is entitled to any evidence introduced by the defendant which is beneficial to his claims. Nelson v. Black Diamond Mining Company, 167 Ky. 681, 181 S. W. 341; Chicago, St. L. & N. O. R. Co. v. Armstrong's Adm'r, 168 Ky. 104, 181 S. W. 957; Terrell v. Southern Railway Company, 225 Ky. 645, 9 S. W. (2d) 993.

4. Several items of evidence are regarded by the appellant as having been erroneously admitted to his prejudice. We deem only two of them of sufficient materiality to require discussion.

The widow, as plaintiff, was asked how much her deceased husband had earned. Over an objection, she was permitted to answer "between $40 and $50 a week, sometimes more." This, it is argued, violated the inhibitions of section 606, Civil Code of Practice. On the face it does not appear that this knowledge was gained by reason of the marriage relation or from any transaction with the deceased. There are conceivably many other means by which the information could have been obtained, and, if it was so obtained, the widow was a competent witness. English's Adm'r v. Cropper, 71 Ky. (8 Bush) 292; North River Insurance Company v. Walker, 161 Ky. 368, 170 S. W. 983. She was not further questioned upon this point, and it is not otherwise shown that she was incompetent to testify upon the subject. There is a presumption of competency, and the burden of showing incompetency is on the party objecting upon that ground. Hale v. Commonwealth, 196 Ky. 44, 244 S. W. 78; Hembree v. Commonwealth, 210 Ky. 333, 275 S. W. 812.

A witness who went immediately to the scene of

the accident testified that about three-fourths of a mile back and two or three minutes before the accident occurred, the truck passed him, and that the left-hand light was not burning. Appellant invokes the rule which prohibits evidence of the speed at what is regarded as a remote distance from the point of the accident. Counsel cite no authority upon this question as to the lights of an automobile, and our own search reveals none except Robinson Transfer Company v. Turner, 244 Ky. 181, 50 S. W. (2d) 546, and that is distinguishable on the facts. We think evidence as to speed and as to lights is to be regarded with some difference. The speed of a car is peculiarly under the control of the driver and intrinsically variable, while the lights of the machine are more constant and not likely to be extinguished by the driver while continuing in the dark. It then becomes a mechanical matter. When one light is out because of some defect, it is not apt to go on again in so short a space of time as was involved here, although, of course, it may do so. It is shown that this truck did not stop between the place where the witness saw it and the place of the accident. A reasonable inference may be gathered that there was no change, and we regard the evidence competent as a circumstance to be considered by the jury as to whether or not the light was or was not burning at the time of the accident.

5. The court instructed the jury:

"It was the duty of the driver of defendant's truck at the time and place referred to in the evidence to have his truck under reasonable control, and to operate it at a reasonable rate of speed, and in approaching the bridge where the collision is said to have occurred, and in meeting the Greenfield car not to exceed a speed of twenty (20) miles per hour, and to have at least two lighted lamps in front showing white, tinted other than red light, and of sufficient power to clearly reveal substantial objects at least two hundred feet ahead, and to travel upon the right hand side of said highway, and to keep a lookout ahead for other vehicles on said highway, to exercise ordinary care to avoid collisions with them, and if the jury believe from the evidence that the driver of defendant's truck failed in the performance of any one, or more, of said duties, and that as a direct and proximate re-

sult of such failure, if any, the truck of the defendant collided with, or struck the car of plaintiff's intestate, Greenfield, and that by reason thereof said Greenfield received injuries from which he presently died, then the law would be for the plaintiff, and you will so find. But unless you believe from the evidence, or, if you believe as set out in Instruction No. 2, you will find for the defendant."

With confidence the appellant argues that this was erroneous because he had the right to operate the truck at a speed greater than 20 miles an hour if it was reasonable, and he rests his argument upon the authority of Utilities Appliance Company v. Toon's Adm'r, 241 Ky. 823, 45 S. W. (2d) 478. The form of instruction outlined in that opinion was in a case to which was applicable section 2739g-51 of the Statutes declaring that speed of automobiles in excess of stipulated rates under certain conditions shall be deemed prima facie negligence. Another section of the statute is applicable to this case, that is, section 2739g-39, which may be quoted for convenient reference:

"Vehicles proceeding from opposite directions shall pass each other to the right, each giving to the other one-half of the road as nearly as possible; and neither proceeding, when on a straightaway, unobstructed highway, at a greater rate of speed than thirty miles per hour; or, when meeting on a sharp curve or steep grade or bridge, at a greater rate of speed than twenty miles per hour, or in congested traffic wtihin the limits of municipalities not more than fifteen miles per hour."

It will be observed that the prima facie features of the other section are not contained in this one. The instruction given is correct.

There was some evidence tending to show that the deceased was under the influence of intoxicants at the time of the accident, and it is submitted that the instruction defining ordinary care should have been like that set out in Black Star Coal Company v. Slusher's Adm'r, 221 Ky. 729, 299 S. W. 732, which defined it as being in that case "that degree of care which ordinarily prudent persons, if sober, usually exercise," etc. The defendant offered no instruction of this kind. The court

gave one which he did offer advising the jury in effect that to drive an automobile while intoxicated is prima facie evidence of negligence. There was no prejudicial error here.

6. We find no merit in the claim of improper argument of counsel for the plaintiff.

7. The contention that the verdict of $8,000 is excessive cannot be sustained. The deceased was twenty-nine years of age, and there was evidence that he was an industrious barber and earned $45 to $50 a week. Appellant buttresses his argument that the excessive verdict was the result of passion and prejudice incited, not only by the argument of counsel, but by the fact that a few days before the case was called for trial there was another accident between a truck and an automobile in which a prominent citizen of Hopkinsville suffered the loss of an arm, and this created much feeling against drivers of trucks. On motion for a new trial, this was given as a ground, and a copy of a local newspaper carrying an account of this accident was filed, as well as affidavits of jurors that it had been discussed_in the presence of the jury. We do not find any motion for a continuance of the case upon this or any other ground. It is not, in our opinion, by any means sufficient to have authorized the trial court to set aside the verdict.

The defendant has had a fair trial of his cause, and has shown no legal ground for a reversal of the judgment.

The judgment is affirmed.