## Spencer's Administrator v. Fisel.

(Decided Feb. 27, 1934.)

WILLIAMS & ALLEN for appellant.
W. B. WHITE and S. M. NICKELL for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The correctness of the trial court directing a verdict for the defendant, is the paramount question. The propriety of its giving necessarily depends on the evidence adduced.

This action was filed by the administrator of Selden Spencer to recover of J. C. Fisel, damages for the destruction of his decedent's power to earn money. By appropriate pleadings issues were joined, and, after the jury heard the parties and their witnesses, the peremptory instruction was given, of which the administrator now complains.

About 11 o'clock on the night of June 26, 1931, Herbert Reynolds and Ira Caudill, Grace Riley, and Mal Cornett, left Hazard, Ky., in an automobile; the four riding on the same seat, Herbert Reynolds driving. They were equipped with at least a quart of whisky, with which they became more or less intoxicated. About two miles east of Campton, Selden Spencer and Luther Rose got on the car in which they were traveling, Rose on the right and Spencer on the left running board, when the car continued west toward Campton. A truck going east approached the car in which they were driving, rounding the curve, when a collision occurred; Selden Spencer was thrown from the running board onto the highway and sustained serious injuries, resulting in his death. The traveled portion of the road where the accident occurred was about 20 or 24 feet wide. The truck was traveling at the rate of 40 to 45 miles an hour and the automobile at about 20 miles an hour at the time of the collision. It is not required of us to pass on the question of the negligence of the operator of the truck or the contributory negligence of Spencer or any of the occupants of the car on which he was traveling. Rose, who was riding on the right fender of the car, on August 6, 1931, made a written statement that he did not know whether it was an A & P Truck; he did not see any license on it because it was going too fast, it was red and with "lettering" on it, but "it was going too fast," he could not tell what it was. When testifying as a witness, he stated it was a J. C. Fisel truck, "a big red truck with A & P up in front over the windshield and J. C. Fisel on the side—great big letters." The car in which he and his associates were traveling was going east toward Campton and the truck was going west toward Jackson. It was about 11 or 11:30 in the night. The truck was hauling "big drums," something like gas drums. Ira Caudill testified he saw no letters on the truck, "it was a large red truck"; it flashed around a little curve, raising a little dust which kept him "from seeing what truck it was." It was a big red truck, and that was as far as he identified it. Mrs. Reynolds lived about 74 or 75 miles east of Campton. She testified that "about 2:30 in the morning of the night of June 26, 1931," she saw a J. C. Fisel truck in front of her place at Cornett Hill, with the name of J. C. Fisel on the front and letters "A & P" on the side. She failed to identify the driver. It is fair to remark that between the point where she saw the truck and

where the accident happened, there were numerous villages on different highways including Jackson and Hazard and coal mining points.

Beverly Gabbard and his sister on the same night were riding on an A & P truck, going from Duane in Perry county toward Winchester on the Kentucky-Virginia Highway. About three miles east of Campton, the truck on which they were riding passed a J. C. Fisel truck going east. On arriving at Campton he learned of the accident. In a written statement previously made by this witness, he claimed he passed no truck of the "A & P" or "J. C. Fisel" or any red truck, but had passed one painted green. J. C. Fisel himself was called on cross-examination and testified he operated about 100 trucks in Kentucky; they were red, and had painted on each side and on each door of the cab, the words "Owned and operated by J. C. Fisel, Louisville, Kentucky."

The foregoing is substantially the evidence in behalf of the administrator as to the identity of the driver and the truck which collided with the automobile at the time Spencer sustained his injuries, causing his death.

Fisel testified "no truck is operated on the highway with his name on it, without the sanction of himself or his employees," his trucks were operated by the authority and direction of his dispatchers, Ritter and Straw; they had exclusive control of dispatching or sending out trucks for him; that he had not sent and they did not dispatch any trucks to Wolfe county, or on that highway on the date of the accident.

Ritter testified "no J. C. Fisel truck was being driven on the highway from Campton to Jackson on the night of the accident." He elaborately details how the only two trucks on that day were operated by Bolton and Beard from Lexington, traveling east about 4 o'clock in the morning and returning to Lexington early the following morning (or in opposite direction of the one that collided with the automobile). The records of the J. C. Fisel Company show no trucks of J. C. Fisel were in Wolfe county, or elsewhere on any highway in that section on the date of the accident, other than the two operated by Bolton and Beard. Independent of the record of the whereabouts of the trucks of J. C. Fisel, Ritter testified that he knew from memory that the trucks driven by Bolton and Beard were the only trucks

owned and operated by Fisel on that highway on that night.

Straw, who was one of the dispatchers of Fisel's trucks, at the time of the accident, testified that no trucks were dispatched on that highway that night from the Louisville office.

Beard, the driver of one of the trucks, which left Lexington about 4 a. m. and returned to Lexington early the next morning, testified he left Lexington about 5 a. m. driving the truck to Neon—the end of his journey, from which point he returned; he stopped between Jackson and Campton, traveling west on the highway, where he went to sleep; then drove through Campton about 2 or 3 o'clock in the morning, arriving in Lexington about 8 or 9 o'clock.

Raymond Bolton was the driver of the other truck of J. C. Fisel, which left Lexington on the morning of the accident about 5 o'clock and returned on the night of the accident, driving west. Both Bolton and Beard not only describe their trips, showing the beginning and end of their respective journeys, but give the direction in which they traveled. Both of them not only stated, but by description of their respective journeys, show, that no A & P or J. C. Fisel truck under their control or by the authority or with the knowledge or consent of Fisel or either of his dispatchers was driven east on the highway on the night of the accident. Roy Day and Corbett Lovely substantiate the testimony of Beard and Bolton. Lovely testified that he received information of Ollie Igo that the accident had happened in which Spencer was injured; that Igo was operating a "red-bodied" truck on the highway where the accident happened, "headed east."

James Igo and Ollie Igo testified that on the night of June 26, 1931, they were in a red truck traveling east from Campton on the road known as the Kentucky-Virginia highway. They left Campton some time between 10 and 11 o'clock; Nathan Greer was riding with them in the cab, Ollie Igo driving. A short distance east of Campton they met a roadster automobile with persons standing on the running boards. It was running very rapidly, zigzagging from one side of the road to the other. The truck was driving on the right of the road, heavily loaded with large gasoline tanks or drums. If the truck in which they were traveling collided with the

roadster on which the persons were riding on the running boards, they had no information of it at the time, but next morning on hearing of the accident, they examined their truck, and found that the left side of the body of it, the side that passed next to the roadster, had been struck by something near the rear, and the marks were fresh. It is observable the "Igo truck" was traveling east, and the car it met was zigzagging, was travel-west. This fact, and the time and place of the accident, show an opportunity for a big red truck to strike the car on which Spencer was riding at the time of the accident, causing his injury.

This is substantially the evidence in behalf of Fisel. The testimony of the Igo boys strongly tends to establish that the truck they were operating was the one that collided with the car on which Spencer was riding at the time of his injury.

The duty rested upon the administrator to establish not only his decedent sustained his injury by a collision of the truck of J. C. Fisel, but that it was being operated at the time by his agent or servant in the performance of Fisel's business and within the scope of the agent's employment.

Excepting the testimony of Rose there is not an iota of evidence, tending to show the truck was owned by Fisel or operated by his agent or employee in his business, or with his, or his dispatcher's authority, consent, or knowledge. The evidence in behalf of Fisel establishes beyond dispute the truck causing the injury to Spencer, if owned by Fisel, was not being operated at the time and place of the accident by any one with his authority, consent, or knowledge, or that of his dispatchers or for his business. Even if the truck was the property of Fisel, that alone would not make him liable, nor create the presumption the person who was operating it was Fisel's employee, acting within the scope of his authority, or in furtherance of, or in his business. See Doss v. Monticello Electric Light & Power Co., 193 Ky. 499, 236 S. W. 1046; Gainesboro Telephone Co. v. Thomas, 234 Ky. 373, 28 S. W. (2d) 34; Mullins & Haynes Co. v. Crisp, 207 Ky. 31, 268 S. W. 576, and cases cited; Roselle v. Bingham, 242 Ky. 496, 46 S. W. (2d) 784; Packard-Louisville Motor Co. v. O'Neal, 248 Ky. 438, 58 S. W. (2d) 630; Kennedy Transfer Co. v. Greenfield's Adm'x, 248 Ky. 708, 59 S. W. (2d) 978, and

cases cited; American Savings Life Ins. Co. v. Riplinger, 249 Ky. 8, 60 S. W. (2d) 115. The principles enunciated in those cases are applicable and controlling in the present one.

Where the evidence involves issues of fact about which fair-minded men might honestly differ as to the conclusion drawn therefrom, whether controverted or not, or if legitimate inferences thereupon tend to support the plaintiff's cause of action, or if the facts support his contentions, the issues should be submitted to the jury. Only when all facts and circumstances taken together fail to establish the plaintiff's cause of action or the inferences that can reasonably be drawn therefrom fail to establish the case, it may be regarded the evidence was not sufficient to require the issues be submitted to the jury for determination. Central Coal & Iron Co. v. Owens, 142 Ky. 19, 133 S. W. 966; Bergman v. Solomon, 143 Ky. 581, 136 S. W. 1010; Pacific Mutual Life Ins. Co. v. Cash, 224 Ky. 292, 6 S. W. (2d) 239; Grinstead v. Feinstein et al., 231 Ky. 502, 21 S. W. (2d) 806. Also a verdict is properly directed when the testimony affords no basis for recovery by the plaintiff or it conduces in no degree to establish some fact essential to his recovery (McPherson v. Hickman, 1 T. B. Mon. 170), or when it with all reasonable inferences deducible therefrom is insufficient to support a verdict (Ky. T. & T. Co. v. Wilson, 165 Ky. 123, 176 S. W. 991), or where admitting the evidence and all reasonable inferences to be true, it fails to support the cause of action, or a defense, the verdict should be directed (C., N. O. & T. P. Ry. Co. v. Hansford, 173 Ky. 126, 190 S. W. 690; Stanley's Adm'r v. Duvin Coal Co., 237 Ky. 813, 36 S. W. [2d] 630). On a motion for a peremptory, the evidence of the party presenting the cause of action or defense must be taken as true. Cornett's Adm'r v. L. & N. R. R. Co., 233 Ky. 797, 26 S. W. (2d) 1031. A motion therefor admits the truth of all evidence and the reasonable inferences and deductions therefrom, and it is the court's duty to construe the evidence most favorable to the opposing party (Globe Indemnity Co. v. Daviess, 243 Ky. 356, 47 S. W. [2d] 990; N. A. Accident Ins. Co. v. West, 245 Ky. 316, 53 S. W. [2d] 692; Dossenbach v. Reidhar's Ex'x, 245 Ky. 449, 53 S. W. [2d] 731), but if, when the case is submitted to the jury it will be bound to find a verdict for the other party under the proof, it is proper for the court to direct a verdict

accordingly (L. & N. R. R. Co. v. Mounce's Adm'r; 90 S. W. 956, 28 Ky. Law Rep. 933; Stanley's Adm'r v. Duvin Coal Co., supra).

The whole of the evidence convincingly shows the administrator utterly fails to establish one absolutely essential element indispensably required to authorize and sustain his recovery, i. e., the truck was one of Fisel's, or if it was, it was being operated at the time and place of the accident by his or the dispatchers' authority, either expressed or implied, with the knowledge or consent of either one of them, by an employee acting within the scope of his employment.

The evidence that no trucks owned by J. C. Fisel and operated by one of his employees by his or his dispatchers' authority, or on his business on that particular highway, traveling east on the night of the accident, is neither impeached nor disputed. Even though the case had been submitted to the jury, and if it had accepted the testimony of Rose, still there was a total absence of any evidence other than mere presumption that the truck was owned by Fisel and operated at the time in his business by an employee acting within the scope of his employment. Under the evidence adduced, the jury would have been bound to return a verdict for the defendant because of the absence of evidence as to those essential requirements, which deprived the administrator of the right to a submission on the mere presumption of ownership of the truck and the authority of the driver arising from the testimony in favor of the administrator.

It is our view no error was committed in directing a verdict for Fisel.

Wherefore, the judgment is affirmed.