## McCray v. Earls.
## Earls v. McCray.
(Decided Oct. 2, 1936.)

GOLDEN & LAY for Robert McCray.

H. H. OWENS for Sis Earls and Robert Earls.

OPINION OF THE COURT BY JUDGE STITES—Reversing in part and affirming in part.

These two appeals are from a judgment of the Knox circuit court based on the verdict of a jury in favor of the appellee Sis Earls, against the appellant Robert McCray, and a judgment in a separate action based on the verdict of the same jury in favor of Rob-

ert McCray, who was the defendant in that action and appellee in that appeal, denying a recovery to Robert Earls, the father of Sis Earls. Both actions arose as a result of an automobile accident in which Sis Earls was injured. She sued by her next friend to recover for the injuries, and her father, Robert Earls, sued to recover for loss of services. The two actions were heard together.

The accident happened on September 7, 1934, about 4 o'clock in the afternoon, at a point on the highway between Pineville and Barbourville. At the point in question the road is of black top with a four-inch concrete edge or curb on either side. Sis Earls, who is seven years old, was returning to her home from school in company with her elder brother and a group of other school children, all of whom were walking along the dirt path on their left of the road as they proceeded toward Pineville. As the group reached a point opposite the garage of Tom Callihan, Bud Earls, the elder brother, crossed the road to the garage for the purpose of obtaining a drink of water. Sis Earls followed her brother across the road for the purpose, so she says, of getting some willows that were in a swamp near the garage and on that side of the road. The automobile of the appellant Robert McCray, operated by his wife in company with her daughter and two other ladies, was a new 1934 Plymouth. It was proceeding from Pineville toward Barbourville on its right side of the road. The road is straight for some little distance on either side of the point at which the accident occurred. As the car approached the Callihan Garage it swerved suddenly to the left and struck Sis Earls. The right front headlight was broken by the impact. When the car stopped, the two front wheels and the left rear wheel were off the paved portion of the road. All of the witnesses substantially agree to the facts as thus far stated. Sis Earls testifies that she had crossed the road and was standing on the curb on the far side when she was struck by the McCray car. Mrs. McCray, on the other hand, testifies that the child darted out from the group just before she reached them, and that she swerved the automobile, applied the brakes, and blew the horn, in an effort to avoid the accident; but that she was unable to do so. The only witness who might be said to be entirely disinterested in the matter confirms Mrs. McCray

to the extent that she says the child ran in front of the automobile. The physical fact that the right front headlight was broken by the impact also tends somewhat to support the defendant's theory. The child suffered a broken leg and several deep cuts and bruises about her body and head. At the conclusion of the testimony, the jury returned a verdict in favor of Sis Earls in the sum of $4,000. In the action by her father for loss of services, a verdict was rendered for the defendant.

The appellant Robert McCray urges that he was entitled to a peremptory instruction, that the damages are excessive, and that the instructions given are erroneous. The appellant Robert Earls, in his separate appeal, urges that, the jury having found the defendant guilty of negligence in the action by Sis Earls, recovery on his behalf inevitably follows.

The petition in the Sis Earls case charged negligence in general terms, but the specific negligence relied on in this court to sustain the judgment lies in the alleged failure of Mrs. McCray to sound the horn a sufficient distance from the group of children to give warning of her approach. Whether or not, under the circumstances, section 2739g-28 required that a warning should have been given, and whether or not the warning alleged to have been given was actually sounded, or sounded early enough to be effective, were plainly questions within the province of the jury, and it was not error, under the evidence, to refuse appellant's request for a directed verdict.

By instruction No. 5 the court, in substance, told the jury that if the driver saw or could have seen the brother of appellee leave the group of children and cross the highway, then it was the duty of the driver to anticipate that other of said children would follow said child, and it was her duty to sound the horn a sufficient distance away to give warning of the approach of her car. Section 2739g-28 of the Statutes does not make it the absolute duty of the driver of an automobile to sound the horn at every opportunity that presents itself. In fact, it provides that the driver "shall not sound said horn or sound device unnecessarily." Clearly the necessity of sounding the horn, and the point at which the warning should have been given, under the conflicting evidence here presented, were questions for

the jury, and not the court. Instruction No. 5 should not, therefore, have been given. Caines et al. v. Wheeler, 207 Ky. 237, 268 S. W. 1098.

It is argued, however, for appellee that, under the decision in United Casket Co. v. Reeves, 206 Ky. 581, 267 S. W. 1108, the court should say as a matter of law that it was the absolute duty of the driver of the car to sound her horn. In the United Casket Company Case the driver of the truck involved admitted that he saw the plaintiff, a child, *out in the street* as he approached. The admitted circumstances there presented pointed inevitably to the necessity for a warning. Reasonable persons might well disagree as to the necessity for sounding the horn under the conditions presented to the driver here. It was for the jury to say whether or not a necessity existed for the giving of a warning, if one in fact was not given, as well as to consider what, if any, of the other general duties of the driver were not performed.

It was the duty of the driver of the car under the evidence to exercise ordinary care to have the car under reasonable control, to operate it at a reasonable rate of speed, having regard to the traffic and use of the highway, and to give, if necessary, timely warning of the approach of said car. Similarly, it was the duty of the plaintiff to exercise ordinary care—commensurate with her age—for her own safety. Instructions on these correlative duties cover the vitals of the case unless, under the evidence, a "last clear chance" or "sudden appearance" instruction be justified. No objection is taken to the definition of ordinary care or to the measure of damages as given by the court on the first trial. Certainly instructions on these points cover all the issues now presented, and it was unnecessary to extend or confuse the issues presented by focusing the attention of the jury on particular phases of the evidence.

In the separate appeal of Robert Earls the only serious contention urged is that, the jury having found the defendant guilty of negligence in the action by Sis Earls, recovery on his behalf inevitably follows. With equal propriety it might be argued by the defendant that, since the jury found for him in the Robert Earls case, it inevitably follows that Sis Earls is not entitled to recover. The jury may well have believed that Rob-

ert Earls had been fully compensated for any loss he may have suffered by virtue of the loss of services of Sis Earls or, indeed, that he suffered no loss at all.

Several other questions are presented in the Sis Earls case, which we do not now decide. They are reserved.

In the appeal of Robert McCray v. Sis Earls, by her next friend, the judgment is reversed. In the appeal of Robert Earls v. Robert McCray the judgment is affirmed.