## McGraw's Adm'r (Lee) v. McGraw's Adm'r (Davidson)

Jan. 15, 1943.

Fritz Krueger and B. J. Bethurum for appellant.

John S. Cooper, Gladstone Wesley and E. R. Denny for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

This action was filed by the administrator of Susan Lee McGraw against the administrator of Jasper McGraw seeking a recovery of the distributable portion of Jasper McGraw's estate to which, it was alleged, Susan was entitled as surviving widow of Jasper. No question of procedure was raised and, by agreement of parties, the cause was submitted to the jury solely on the issue of whether Susan survived Jasper. The jury were instructed to find for the plaintiff if they believed that Susan survived Jasper, otherwise to find for the defendant. The verdict was for the defendant and from the judgment entered on that verdict this appeal is prosecuted.

Two grounds for reversal are urged, 1) that the verdict is flagrantly against the evidence and 2) that error was committed in rejecting competent evidence offered by appellant. These grounds will be considered in order.

There is little, if any, conflict in the evidence. Jasper and his wife, Susan, both reputed to be past 90 years of age, lived in a remote section of Rockcastle County for many years prior to their deaths, which occurred on April 22, 1940. They had no children and lived alone and almost wholly unto themselves. No one had been in their home for several days prior to their deaths. Jasper had been sick for a week or more.

The nearest neighbor lived three hundred yards south of the McGraw home—in "hollering" distance as some of the witnesses stated. The next neighbor to the south was approximately one-half mile away and the third neighbor to the south was three-quarters of a mile distant. The McGraws were on friendly terms with these three neighbors. North of the McGraw home the nearest neighbor was one-half mile distant and the next nearest three-quarters of a mile. The McGraws were not on friendly terms with these two neighbors but were on friendly terms with the Renners who lived a mile and a half to the north.

About 5 o'clock on the afternoon of April 22, 1940, Susan's body was discovered in the county road approximately one-half mile north of her home by a neighbor woman. Persons who gathered thought, at first, that the body was that of Jasper. The body remained where found until after 9 o'clock in the evening when it was taken home. Upon arrival at the McGraw home, somewhere between 10 and 11 o'clock, Jasper was found dead in bed. He was lying on his back. Four quilts on the bed were folded back to the side of the bed and against the wall. One quilt, not tucked in, was over him, covering his head. His feet were wrapped in a heavy blanket but the knees were flexed and elevated. Some difficulty was encountered in depressing the knees and keeping them depressed. His hands were crossed, or touching, on the lower part of his chest. His eyes were closed and his mouth also was pretty well closed. Rigor mortis had set in and his body was cold but the underside of the feather bed on which he was lying was still warm. Some discoloration of the body was evident.

About 11 o'clock in the morning a neighbor woman passing by saw Susan leaning over the bed in which Jasper was lying "working with her hands." Upon receiving information of the finding of the body, and thinking it was Jasper's body that was found, two of

the neighbors went by the McGraw home about 8 o'clock in the evening for the purpose of notifying Mrs. McGraw of what had happened. They called but received no answer. However, they heard a noise in the house. One of these men said that the noise sounded like a chair being pushed back. There was a cat in the house which, says the appellant, might have made this noise. Several witnesses testified that they had seen Jasper lying in bed with the cover pulled over his head while he was sick.

It was proven that there were cattle tracks in the road leading from near the McGraw home northwardly past the point Susan's body was found. It was also proven on several occasions Susan had driven, or had procured others to drive, cattle away from the vicinity of her home. Appellee insists that it is a reasonable inference that Susan was engaged in driving away cattle rather than seeking help after the death of her husband.

An undertaker was called as a witness for appellant and to him was propounded the following question: "Then I will ask you if the position of a person laying on his back with his hands crossed, one on top of the other, such as I show you here is a natural or unnatural position for death to occur?" Objection was sustained to this question and it was avowed that if the witness were permitted to answer he would state, "It was unnatural." He was then asked, "Have you ever seen anyone die with their hands crossed in the position I have described to you in the former question," and was permitted to answer that he had not.

It is the contention of appellant that but one legitimate inference could be drawn from the evidence, namely, that Jasper had died and that Susan had "laid him out" and at the time of her death was seeking help and that the finding of the jury to the contrary is flagrantly against the evidence.

If the only legitimate or justifiable inference to be drawn from the evidence is that Jasper's body had been laid out by Susan, then a verdict should have been directed in appellant's behalf since we have frequently written that where the facts of the case are undisputed and but one legitimate inference can be drawn from them the court, and not the jury, should determine their effect. Western Union Telegraph Co. v. Smith, 164 Ky. 270, 175 S. W. 375; Stratton v. Northeast Coal Co., 164

Ky. 299, 175 S. W. 332; Western Union Telegraph Co. v. Teague, 134 Ky. 601, 121 S. W. 484.

But, while we are somewhat inclined to the view that appellant's theory that Jasper had died and that Susan had laid him out is the correct one, we are not prepared to say that this was the only justifiable or legitimate inference that a reasonable mind might draw from the facts. It is not impossible or even improbable that Jasper died with his hands crossed over his chest. And the testimony of the witnesses that they had seen Jasper with the cover pulled over his head while living counteracts to a material extent the rather natural inference to be drawn from the fact that when his body was found his face was covered by one quilt, while the other quilts were thrown back. Again, it seems somewhat unnatural that Susan would have gone for help, in case of Jasper's death, in the direction of unfriendly neighbors who lived further away rather than towards the much closer and friendly neighbors to the south of her home. She might have been driving away cattle, as suggested by appellee, or she might have thought Jasper was dying and been on her way to secure help on that account. Some consideration must also be given to the testimony of the two witnesses who heard a noise in the house after the known time of Susan's death.

The burden was on appellant to establish that Jasper died first. It is definitely known that Susan was dead at 5 o'clock—how long before that no one knows. It was incumbent on appellant to prove that Jasper died before that time. Unless the only legitimate inference to be drawn from the evidence is that Jasper had been laid out by Susan, appellant failed to establish his case. The jury rejected this inference. We think their action in so doing must be upheld in accord with our policy of not encroaching on the province of the jury.

The jury are as much the judges of the inferences and conclusions to be drawn from the proven facts as they are of the facts themselves and if the inferences or conclusions drawn by them are such as might be drawn by a reasonable mind, the jury's finding, based on such inferences or deductions, should not be disturbed even though the inferences or deductions may not have been those we would have drawn had we been sitting as triers of fact. Beiser v. Cincinnati, N. O. & T. P. Ry. Co., 152

Ky. 522, 153 S. W. 742, 43 L. R. A., N. S., 1050; Spencer's Adm'r v. Fisel, 254 Ky. 503, 71 S. W. (2d) 955.

It is insisted that the trial court was in error in refusing to permit the undertaker to answer the question quoted above, but it is apparent that such error, if there was one, was not prejudicial since the witness was, as indicated above, permitted to answer practically the same question in a different form.

Affirmed.