## HARRIS v. MORRIS.

Court of Appeals of Kentucky.

June 19, 1953.

Garland R. Hubbard, Louisville, for appellant.

R. I. McIntosh, Woodward, Hobson & Fulton, Louisville, for appellee.

STEWART, Justice.

Thomas L. Harris, administrator of the estate of Helen Harris, his deceased daughter, filed this action against Marvin Morris to recover $50,000 damages for the death of the daughter. The petition alleged negligence generally. Morris answered by pleading contributory negligence and, in addition, by averring that the daughter's death was caused solely by the negligence of the operator of the bicycle on which she was riding when she received injuries which caused her death. The jury found for Morris and this appeal is from the judgment entered thereon.

Appellant alleges prejudicial errors were committed by the lower court (1) in submitting to the jury "Instruction 2" and "Instruction 3"; and (2) in refusing to give certain offered instructions, which we shall specifically mention hereinafter. Appellee maintains he was entitled to a directed verdict, and we shall consider this contention at the outset.

Helen Harris, a girl thirteen and one-half years of age, while riding on the frame between the handle bars and the seat of a bicycle operated by William Vormbrock, a fifteen-year-old boy, was fatally injured on May 4, 1950, when the bicycle was struck by an automobile driven by appellee, Morris. The collision occurred about 9:30 p. m. in the intersection of Sixth Street and Ashland Avenue in Louisville, and the place of the accident was near or just a little east of the middle of Sixth Street and eight or ten feet north of the south curb of Ashland Avenue. The Vormbrock boy was knocked a distance of fifteen feet, the girl was thrown down with great force on the pavement, and the right front headlight of appellee's car was demolished by the impact. Sixth Street is

38½ feet wide and Ashland Avenue is 35½ feet wide at the intersection. Ashland Avenue is a boulevard and traffic thereon has the right of way. A street light, burning on the northeast corner of the two thoroughfares, made visibility good at the site of the accident.

William Vormbrock, the operator of the bicycle which was struck, testified that he was going north on Sixth Street with the girl; that the automobile was traveling east on Ashland Avenue at the time of the collision; that he stopped ten to fifteen feet from the intersection at or near a stop sign to call back to a boy friend who was following him; that his view was unobstructed in his front and on both his sides and he looked up and down the avenue but saw no car coming; that he came into the intersection first and was about a fifth or a fourth of the way out in it when he saw the Morris car entering it; that appellee's car lights were dim; that he did not have any lights on his bicycle; that appellee's car was "coming pretty fast" toward him but he thought it was going to stop before it hit him; and that, to employ his own words, "I could not stop and was just paralyzed and I heard Helen scream and the tires skidding and we hit." After the accident he said he looked and saw skid marks extending a distance of five feet from the back tires of appellee's car.

On cross-examination the Vormbrock boy admitted he signed a written statement after the accident and prior to the trial which contained, among other things, admissions to the effect that he did not stop at the intersection, that he did not see appellee's car until just before the collision, and that he heard the motor of the car before he started into the intersection. He said, however, that these declarations contained in the statement were not true when he made them. He also denied he told an officer at the scene of the collision that he did not know there was a boulevard stop at the intersection when the officer asked him how the accident had happened. Obviously this line of evidence tended to undermine young Vormbrock's credibility as a witness.

Dennis Dains, a sixteen-year-old companion of the Vormbrock boy on the occasion of the accident, was on Sixth Street approximately 150 feet south of its intersection with Ashland Avenue. He said he was entirely off his bicycle, tightening its handle bars with a pair of pliers, and he called to young Vormbrock who was then about fifty feet from the intersection and told him to go ahead. He said the next time he noticed the Vormbrock boy and girl was when his attention was attracted to them by the girl's scream, and then he saw that the Vormbrock boy "had just started out in the intersection and the car was coming." At that time he figured the car and the bicycle were something like four feet apart and he said they collided in a matter of four or five seconds. When asked about the speed of the Morris car, he replied that " it must have been going fast."

Appellee testified that as he approached the intersection "there was a fellow coming out Sixth Street going north and he stopped and made a left turn in front of me." He said he slowed up to let the driver of this car get out of the way and as this person turned to appellee's left and went west on the avenue the latter entered the intersection headed east. Meanwhile he said he fed gas to his car and sped up. He stated he was looking straight ahead when he saw the bicycle start into the intersection just about the time he was entering it. He then jammed his brakes, stopped as quickly as he could but he did not have time to swerve his car to his left. If the bicycle stopped before it moved into the intersection, he said it did so down Sixth Street at a point where he could not see it. According to him, his speed was from fifteen to twenty miles per hour and that of the bicycle from eight to ten miles per hour. He estimated his car was brought to a standstill within four or five feet after the collision. His lights were on dim when the accident occurred but they would reveal substantial objects a hundred feet ahead.

Wanda Morris, appellee's eleven-year-old daughter who was with him, testifying as to what she observed concerning the acci-

dent, said: "I saw something like the figure of a bike come out from behind the trees and I heard a crash * * *." She said her father was driving "very slow."

It is appellee's position that there was no evidence or, at least, no more than a scintilla of evidence, that he was guilty of negligence and, therefore, the case should not have been submitted to the jury. Furthermore, he insists that the sole cause of the accident was the action of the Vormbrock boy in disregarding the boulevard stop sign and in riding the bicycle into the path of his car.

On the occasion of the accident, appellee was traveling on a superior highway and such a motorist may assume, although not with impunity, that the operator of another vehicle about to enter his path of travel will yield to him. However, the duty to exercise reasonable care remains. Thomas v. Dahl, 293 Ky. 808, 170 S.W.2d 337; Adams v. Louisville Taxicab & Transfer Co., 307 Ky. 405, 211 S.W.2d 397. One operating an automobile on a public highway of any character is under an obligation to drive at a speed not excessive under the circumstances, to keep his car under reasonable control, and to maintain a lookout. Schechter v. Hann, 305 Ky. 794, 205 S.W.2d 690. He must also give, if necessary, timely warning of his approach. McCray v. Earls, 267 Ky. 89, 101 S.W.2d 192.

With the foregoing principles as a guide, we shall examine the proof to determine if there was evidence from which the jury could infer that the negligence, if any, of appellee was the proximate cause of the accident. Certain facts deserve special notice in this connection. It is uncontradicted that appellee's car struck the bicycle with such force that it tore off the right front headlight and hurtled the Vormbrock boy fifteen feet through the air. From these physical facts, aside from the testimony adduced herein, a jury could find that appellee was traveling at an excessive rate of speed, or that he did not have his car under reasonable control, or that he failed to keep a proper lookout ahead; in fact, the jury could believe that he failed to comply with all three of these duties. The Vormbrock boy stated appellee was "coming pretty fast" toward him just before he was struck. Appellee testified that he was going at a rate of speed of from fifteen to twenty miles per hour when he entered the intersection, and he said he stopped his car within four or five feet of the point of the collision after the accident. If he had his car under such control and was traveling at such a low rate of speed, why could he have not brought it to a standstill a distance of four or five feet from the bicycle? From his evidence it appears that he was from twenty to twenty-five feet away from the bicycle when the two vehicles entered the intersection. Could it have been he was not keeping a lookout? A jury could conclude he was not. Appellee admitted he saw the bicycle moving into the intersection at about the instant he was entering it. The record discloses he neglected to give any warning of his approach, and a jury could form a conviction, if he had done so under the circumstances, the accident would have been averted.

We are of the opinion there was evidence from which a jury could reasonably decide that appellee failed to observe any one of or all of the foregoing duties. Nor must it be overlooked that there was proof to the effect that the operator of the bicycle came to a standstill when he reached the stop sign near the intersection before starting across the street, and both appellee and the Vormbrock boy testified that each entered the intersection first and thereby acquired the right of way. It is the general rule that negligence and contributory negligence are to be determined by the jury, except where the uncontradicted testimony is such that but one conclusion can be drawn therefrom by fair-minded men, in which case it becomes a matter of law for the court. Hogge v. Anchor Motor Freight, Inc., 277 Ky. 460, 126 S.W.2d 877; Hardware Indemnity Insurance Co. of Minn. v. Sprouse, 308 Ky. 332, 214 S.W.2d 407.

Coming now to appellant's first assignment of error, he complains that Instruc-

tion 2, which attempted to define the duties of the Vormbrock boy and appellee at the intersection, was erroneously worded, and that Instruction 3, a last clear chance instruction, was not warranted by the facts. We shall examine these two contentions.

Instruction 2 is strikingly similar in phraseology to a right of way instruction condemned by this Court in Woods v. Jaglowicz, 235 Ky. 637, 32 S.W.2d 1, and we believe the instruction as given could have tended to create in the minds of the jury the impression that appellee had the unrestricted right of way in the intersection. We have concluded, because it was unqualified and also too favorable to appellee, the instruction was prejudicial to the substantial rights of appellant. Upon a retrial of this case, if there is no material variance in the facts, the court will follow KRS 189.330(4) and (5) in the preparation of the right of way instruction. See also Danville Cab Co. v. Hendren, 304 Ky. 528, 201 S.W.2d 561.

To sustain a last clear chance instruction, appellant's decedent must have been contributorily negligent at the time of the accident. 38 Am.Jur., Negligence, Sec. 217, p. 903; Restatement of the Law of Torts, Sec. 479, p. 1253. In neither the brief of appellant nor that of appellee is the question raised as to whether the deceased girl was guilty of negligence as a matter of law because she was riding on the frame of the bicycle with the Vormbrock boy when she was fatally injured. Although this Court has never passed on this proposition, other jurisdictions have held that the mere fact that a person rides double on a bicycle does not make him or her negligent as a matter of law. Johnson v. Shattuck, 125 Conn. 60, 3 A.2d 229; Maier v. Minidoka County Motor Co., 61 Idaho 642, 105 P.2d 1076. We accept this principle.

However, appellee argues deceased could not have been riding as she was without being conscious that she was engaged in a dangerous pastime on a heavily traveled street during the nighttime and that her position on the bicycle between the handle bars and the seat made it difficult for the Vormbrock boy to control the vehicle and to keep a lookout. This was an intersection case and two main issues were whether the parties kept a proper lookout and had their respective vehicles under reasonable control. Young Vormbrock testified after he saw appellee's car "I could not stop." It is a matter of common knowledge that deceased's position on the bicycle not only interfered with the boy's vision but her presence made it difficult for him to control the vehicle, especially in starting and stopping. Since we have no doubt that the question of the negligence of the bicycle operator was one for the jury to decide we believe we can scarcely hold otherwise than that it was for the jury to say whether there was any causal connection between decedent's riding on the bicycle under the circumstances of this case and the collision that resulted in her death. We said in McGraw's Adm'r v. McGraw's Adm'r, 293 Ky. 722, 169 S. W.2d 840, 842: "The jury are as much the judges of the inferences and conclusions to be drawn from the proven facts as they are of the facts themselves * * *." See also Central Coal and Iron Co. v. Owens, 142 Ky. 19, 133 S.W. 966.

While we believe the question of decedent's negligence should have been submitted to the jury, we are also of the opinion that the evidence developed herein warranted the giving of a last clear chance instruction. Ramsey v. Sharpley, 294 Ky. 286, 171 S.W.2d 427; Colonial Supply Co. v. Bramlett, 249 Ky. 382, 60 S.W.2d 969.

Turning now to the instructions offered by appellant, it is first contended the jury should have been told that the negligence of the bicycle operator cannot be imputed to the decedent. An instruction on this issue was refused by the trial judge. We are of the opinion that a second person on a bicycle riding in the manner that the decedent was falls within the same category as a passenger or guest in a motor vehicle. We have frequently held that the negligence of the operator of a vehicle cannot be imputed to a guest or passenger unless it be shown that the latter had an opportunity to exercise proper care

for his or her safety and neglected to do so. See Mitchell v. Randall, 297 Ky. 302, 179 S.W.2d 868, and the many cases cited therein. The elements that excuse the giving of an instruction on imputed negligence are lacking here. The refusal of the court to instruct that the negligence of the Vormbrock boy cannot be imputed to the deceased girl also constitutes a reversible error.

Appellant next complains because the lower court refused to instruct that the following were duties of appellee at the time and place of the accident: To operate his car at a reasonable speed; to keep a lookout for other persons and vehicles ahead of him; to have his car under control; and to give timely warning of the approach of his automobile by sounding his horn if the jury thought such was reasonably necessary. As we have heretofore discussed these matters in relation to certain acts of appellee, we shall simply state that we think the evidence fully justified the giving of an instruction which included each of these duties, and it was prejudicial error when the court refused to so instruct.

Appellant finally maintains the jury should have been instructed that on the occasion in question it was incumbent upon appellee to have front headlights of sufficient power on his car to reveal substantial objects 350 feet ahead, as required by KRS 189.040(1). Appellee testified he had turned his lights "on dim" prior to passing the car that came out of the intersection to his right just before the accident. We agree with his contention that he would have violated KRS 189.040(2) (c) had he not dimmed his lights under the circumstances. It was shown, too, that he was driving on a lighted street, and he insists it is not only a customary but a safe practice to operate a car with dimmed headlights under such circumstances. We subscribe to this view. To sum up, we think the court was correct in refusing to give this instruction.

Wherefore, the judgment is reversed with directions that it be set aside and the case is remanded for a new trial and for proceedings not inconsistent with this opinion.