Chief Justice Robertson
delivered the Opinion of the Court.
Matilda McFarland Clarke, an infant, suing by her next friend, William Duncan, filed a declaration in assumpsit, against John McFarland Ferguson, administrator, and Mary Jinn McFarland, administratrix, of John McFarland, deceased—averring that, she Joeing the illegitimate child of the intestate, and her mother being about to institute proceedings against him for maintenance, he agreed with the mother, in consideration of her promise to for *46 bear, and also to keep, and nurse, and Labor for, tho plaintiff, that ho would, from time to time, make such auxiliary contributions, in property and money, as might become necessary to “support” herself and the plaintiff “in comfort,” and moreover, at the same time and for the same consideration, fortified by his moral obligation, he promised the mother, that he would “secure and pay” to their daughter Matilda, the plaintiff, whenever requested, the sum of Ten Thousand Dollars; and averring, also that, although the mother had faithfully observed and performed all that she had undertaken to abstain from and to do, nevertheless the intestate had not, in his lifetime, paid or secured to the plaintiff, the ten thousand dollars, or any part thereof, and that his representatives, though specially requested, had refused to do so since his death and their qualification.
Demurrer, and questions for decision.
A verbal promise made by one party to another, that the promiser will pay to a third party, may be enforced by action in the name of the latter, whenever, as between the contracting parties, there is a legal obligation, and the payee was not a stranger to the consideration.
The Circuit Court having sustained a demurrer to the declaration, this writ of error is brought to reverse the judgment in bar of the action.
As tho declaration is undoubtedly good in other respects, we shall consider only the two objections to it which have been urged in argument: first—that the plaintiff is not the proper person to sue; and, second—that the consideration, as alleged, is not sufficient to render the promise for the ten thousand dollars, enforcible by law.
First. Although the general rule, as stated by Mr. Chitty, in his treatise on Pleading (first volume, page 4,) seems to import, that a verbal promise to one, to pay to another, may, under all circumstances, be enforced by an action in the name of the payee, whenever, as between the contracting parties, there is a legal obligation; vet, we think that both authority and principle require that the plaintiff should not be a stranger to the consideration. 1 Comyn on Contracts, 26, Flatbush Ed. of 1809: Dutton and Wife vs. Poole, 2 Levinz, 210; 1 Vent. 318, argued, and same, 332, reconsidered and decided; 1 Strange, 592; 1 Bos. and Pul. 101. n. c.; Pigot vs. Thompson, 3 Ib. 149, and notes, and Schemerhorn vs. Vanderheyden, 1 Johnson’s Repts., 140.
The natural affection and moral duty arising from the connection between a father and his illegitimate child, do not constitute d sufficient consideration to impart a legal obligation to a verbal promise— But—
A moral obligation will support a verbal promise, where, and only where, the promiser has received something valuable from, or been the cause of some loss to, the promisee.
When there is a consideration existing sufficient to uphold a verbal promise, as between the promiser and promisee, and the promise is to pay to a third party, and the third party is a child of the promisee, the effect of the promise (though made to the parent, to pay to the child,) will be the same as though It had been made to the child—who may, therefore, enforce it by an action in his own name.
In this case, according to the declaration, there was no binding consideration between the plaintiff and the intestate promiser; for it is well settled that, neither natural affection, nor the moral duty arising from the relation between them, is a sufficient consideration to impart to a verbal promise a legal obligation. Though it is said, and truly, that a moral obligation may be an effectual consideration for a promise, yet it is not every such obligation that will be so availing. In Pigot vs. Thompson, supra, the annotator, after collating British cases on this point, says, “An express promise, therefore, as it should “ seem, can only revive a precedent good consideration which might have been enforced at law through the “ medium of an implied promise, had it not been suspended by some positive rule of law; but can give no “ original right of action, if the obligation oil which it is “ founded, never could have been enforced at law, “ though not barred by any legal maxim or statute provision.” But the rule, thus defined, is, in our opinion, too comprehensive, and not sufficiently qualified and specific. The true doctrine, as we understand it, may be found in the text in Chitty on Contracts, illustrated by the cases there cited; and is this: that, to be a sufficient consideration for an express promise, a moral obligation must be of that kind which has been superinduced by the fact, that the promiser had received something valuable from the promisee, or had been the cause of some loss to him, for which the law did not imply a promise which it would enforce.
There is no such moral obligation in this case. But the case of Dutton and Wife vs. Poole, and some of the other cases to which we have referred, seem to have established the doctrine that, if there be a sufficient consideration between the contracting parties, to make the contract legally binding as between themselves, the relation of parent and child, between the promisee and the person to whom the promiser has undertaken to pay, will be sufficient to give to the child, as beneficiary, a legal right to demand and enforce the performance of *48 the promise: for, though such relationship would not alone be a sufficient consideration for an enforcible promise by the parent to the child, yet it will convert the valuable consideration, passing from the parent, to the benefit of the child, just as if it had actually passe'd from the latter directly to the party promising, in consideration of value received fro'm the parent, to pay the chili, instead of the parent, in consequence of the relation between them, which induced the latter thus to provide for the former, not by an executory parol contract between themselves, but by the promise of a strangers to pay the child what the parent purchased for, and, in this mode, actually advanced to, the child.
The obligations which rest upon the father of an illegitimate child towards its mother, are sufficient to uphold a verbal promise by him, to pay her a gross sum; and if the promise to her, is to pay to the child, the relationship between the mother and child, is sufficient to give the child a legal right to enforce it.
The mother of an illegitimate child agrees with the father, that she will keep, nurse and labor for, the child, and will forbear to institute any proceedings against the father, for maintenance: in consideration of all which, he makes a verbal promise to her, that he will contribute towards, the support of the mother and child, and will, moreover, secure and pay to the child, $10,000. Held, that these considerations were Sufficient to give legal validity to the promise in favor of the child, as well as those in favor of the mother. The father’s legal obligation to assist in supporting the child, was not the solo consideration for the promise, nor would the consideration he exhausted by the performance of that duty alone. A great disproportion between the obligation and the undertaking, might tend to counteract, the proof of the allegation; that such a promise was in fact made: but, the facts admitted, the apparent extravagance of the promise would not authorize a court to say, that it was not legally binding.
*48 We are, therefore, of the opinion that, if any action be maintainable on the alleged promise to pay ten thousand dollars, the plaintiff has a right to sue.
Second. It has been decided by this Court, in the case of Burgen vs. Straughan; 7 J. J. M. 583, that such a consideration as that described in the declaration in this case, would be sufficient for imparting a legal obligation to an assumpsit, by the putative father of a bastard child, to pay a gross sum of money to the mother; because such a consideration is certainly meritorious and valuable, and is not deemed either impolitic, immoral, or illegal. And if a promise to pay the mother upon such a consideration would be binding, an agreement to pay the child, or both the child and the mother, would, according to the principle recognized in the first-part of this opinion, be equally obligatory.
But it has been argued that the whole consideration was exhausted in the promise to the mother, to contribute to the maintenance of the plaintiff, and that no part of that consideration was applied to the promise to pay the plaintiff ten thousand dollars, nor, in any degree, induced the intestate to make it, arid that, therefore, that assumpsit was without any binding consideration, as it assuredly would have been if the facts thus assumed had satisfactorily appeared; or should be judicially inferred. The allegations of the declaration, however, negative any such a deduction, and this Court cannot decide, that the facts alleged are of such a character as to furnish in *49 trinsic Evidence, that the assumpsit to pay the plaintiff, was without any other consideration than the intestate’s natural obligation to provide for his offspring, or his natural affection for her. On the contrary;, we feel bound to conclude, from the declaration, that the other and valuable cohsideration, as alleged, had an influence on the promise to the plaintiff, as well as on that to her mother. Had the declaration, instead of alleging an assumpsit to pay the plaintiff any thing, averred that, for the consideration which has been recited, the intestate promised, not only to assist the mother in maintaining the plaintiff, but also to pay the mother fifty dollars, in addition to such contribution—could this court decide, on demurrer, that the assumpsit for fifty dollars was without consideration? We think not. We certainly could hot do so, unless we could judicially determine, that the promise to contribute to the maintenance, as alleged, was equivalent to the whole extent of the consideration and entirely exhausted it.
This, however, we cannot do: first— because the legal liability of the intestate, under the statute law, was indeterminate in extent, and depended on the sound legal discretion bf the County Court. Secondly—because such a promise of contribution as that alleged; was evidently hot equivalent, in all respects, to the obligation which the County Court might have imposed; and, thirdly—because, had ho contract been made, the intestate, in addition to statutory liability, was, as we mast presume, in imminent danger, not only of being publicly arraigned, and exposed, and perhaps degraded, but of being also subjected to trouble and loss of time and of money necessarily incidental to ally resistance to conviction arid coercion by the course of the law.
A promise to relieve him from ail this accumulated mass of burthen, as far as the mother could, and to help him, also; to sustain their child, might be consideration enough to have made an assumpsit by the intestate, legally binding for any amount which, he, freely and understandingly, may have elected to allow and pay.— Such a consideration cannot be measured by this Court, nor circumscribed by any definite or prescribed bounds; *50 It is a legal and effectual consideration: its adequacy, or its coextensiveness with the alleged assumpsits by the intestate, the contracting parties, if capable, free, and undeceived, had the right to determine, irrevocably and uncontrolably, for themselves.
The supposed disproportion between the value of the alleged assumpsit and that of the consideration, as stated, so far only as it would be binding, may tend to discredit the allegation respecting the actual existence or fairness of such an undertaking, or to fortify a denial of its truth or other issue in fact; but the facts alleged being admitted by the demurrer, this Court cannot, upon the issue of law thus concluded, decide that the alleged consideration was either illegal or insufficient; or that the alleged assumpsit, on account of exorbitance, or of any thing else now appearing, is not binding in judgment of law.
Wherefore, it is considered by this Court, that the judgment of the Circuit Court be reversed, and the cause remanded, with instructions to overrule the demurrer to the declaration.