## Walker v. Dill's Administrator.

(Decided January 27, 1920.)

## Appeal from Todd Circuit Court.

1.  Executors and Administrators—Services Rendered to Decedent.—
    Where persons related by blood or marriage live together, the
    presumption will be indulged that they do so for the convenience
    and mutual advantage of all, and that neither is to pay the other
    for services performed in connection with the household; but
    where strangers live together no such presumption is indulged.
    On the contrary, where a family boards, lodges and cares for a
    stranger the presumption is that they do so in hope of receiving
    reasonable compensation or in pursuance of a contract.

2.  Executors and Administrators—Services Rendered to Decedent.—
    Where an old man in feeble health makes a verbal agreement with
    another to board, lodge and care for him in consideration of his
    willing or conveying to such person a certain house and lot, and
    dies without executing a will or making the conveyance his estate
    is liable to such person for the reasonable value of the services
    performed although the contract can not be specifically performed
    by adjudging a transfer of the house and lot.

3.  Executors and Administrators—Services Rendered to Decedent.—
    In every case between strangers where the action is for care and
    attention, the measure of recovery will be the reasonable value of
    the services performed, and this is true notwithstanding the parties
    may have agreed that the one receiving the care and attention
    should deed or convey to the other certain real property of a
    given value.

4.  Executors and Administrators—Services.—The measure of recov-
    ery in such case is the reasonable value of the services per-
    formed.

TRIMBLE & BELL for appellant.

J. R. MALLORY for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action was commenced in the Todd circuit court
by Mrs. Jimmie Barbee Walker against the administrator
of J. N. Dill, to enforce an alleged contract made between
Mrs. Walker and J. N. Dill in his lifetime whereby J.
N. Dill agreed in consideration of Mrs. Walker waiting
upon him, boarding, lodging and caring for him to give
by will to Mrs. Walker, at his death, a certain house and
lot situated in the city of Elkton, Kentucky, of the value
of $2,250.00. Dill died without executing any will or

otherwise conveying the property to Mrs. Walker, and his administrator is resisting the claim of Mrs. Walker to the property or its equivalent. The suit does not seek to have a specific performance of the contract to convey or give the property to Mrs. Walker but only to recover its value, $2,250.00.

Issue being joined a jury was empaneled to try the issues of fact, whereupon Mrs. Walker, plaintiff below, called a number of witnesses who testified in her behalf concerning the services performed by her for Mr. Dill during his last illness, and also relating fragments of conversations had with Mr. Dill concerning a contract which it is alleged he had entered into with Mrs. Walker to care for, board, and lodge him during his lifetime, and for which he was to give by will to her the house and lot in question. At the conclusion of the evidence for the plaintiff the administrator entered a motion, which the court sustained, to peremptorily instruct the jury to find for the estate of Dill. This motion was objected to by the plaintiff but the court instructed the jury to find and return a verdict for the administrator, which was done. Judgment being entered on the verdict, Mrs. Walker appeals.

The question presented is: Was the evidence for the plaintiff upon the subject of whether or not an express contract was entered into between Mrs. Walker and the deceased Dill, by which Mrs. Walker was to care for, board, and lodge Dill in consideration of Dill willing to her the house and lot in question, sufficient to have warranted the trial court in submitting the case to the jury? To determine this we will examine briefly the evidence.

The principal witness for Mrs. Walker was Mrs. Lucy Barbee, mother of appellant. This evidence was taken in deposition and read to the jury. The witness was seventy-three years of age, and shortly after Dill purchased the property in question and moved with Mrs. Walker and her husband into the house and Mrs. Walker began to board, lodge and care for Dill, Mrs. Barbee came to visit her daughter and remained several weeks. She immediately became acquainted with Mr. Dill and, according to her evidence, frequently talked with him. She was asked whether she heard Dill speak of a contract or agreement made by him with Mrs. Walker to care for him in consideration of Dill conveying the house they then lived in to Mrs. Walker, and she answered:

"Well, he just said that he did not see how he could get along without Mrs. Walker, and he had agreed to, as long as she gave him her attention as long as he lived, to give her that home. Q. What home did he refer to? A. To the Woods place (the one where they lived). Q. Was it the house in which they were living at the time? A. Yes, sir. Q. How often did you hear him make this statement? A. Mighty near every day. Q. Did you ever hear him make any other statement about Mrs. Walker living up to the contract? A. Yes, sir; he would ask her nearly every day. He would say 'Well are you going to live up to your contract?' and just talked to her that way, and said 'I don't see how I could get along without you;' and then he would tell her that she had contracted to care for him as long as he lived. . . . Q. You say that he said she had agreed to care for him as long as he lived, and what did he say he had agreed to? A. To give her that home. They had went into a contract to give her that home for her attention as long as he lived. Q. How did he say he was going to give it to her? A. He said he was going to will it to her and said it was her home. Q. Did he say anything about what he wanted her to do with it after he was dead? A. He said he wanted her to keep it. Q. Did he say anything about whether he wanted her to sell it? A. No, sir; he just said 'it will be her home at my death according to the contract and I want her to keep it.' "

The next witness, W. H. Grumley, was called, and testified that Mr. and Mrs. Walker and Dill all moved into the house in question at the same time, and that he had heard Mr. Dill say that Mrs. Walker was very kind to him and he did not know how he (Dill) could get along unless he had somebody to give him attention, and that Mr. and Mrs. Walker were always ready to get a buggy and take him to his farm or anywhere he wanted to go. Grumley was asked what he said to him, if anything, concerning a contract with Mrs. Walker to give her the house and lot, to which he answered that Dill did not tell him anything about a contract, but upon being quizzed he said:

"Mr. Walker was whitewashing on the back of the premises, and I said something to him about fixing the place up and Mr. Dill said it was his (Walker's) place, and he says 'it will be, I have that all arranged. That is all fixed.' He said it would be.

"Q. Said it would be? A. Yes, sir; I told him I did not know it was Mr. Walker's property, and he said it would be."

Patterson Walker was then called for the plaintiff and testified that his mother, Mrs. Walker, gave Mr. Dill a great deal of attention and waited upon him with care and patience. Being asked how much trouble Dill was to his mother, he answered:

"He was much trouble. Q. Did you hear Mr. Dill, during the time he lived there, make any statement about a contract he had with your mother about nursing him and caring for him, to give her that house down there? If you heard any conversation tell the jury what was said. A. I did once. I came in the room and mother was just finishing bathing his feet. I came in and sat down by the fire. Q. Did he have trouble with his feet? A. Yes, sir; and he explained to me that he had a contract that if they cared for him all his life they were to have that house. Q. Did he say when he made that contract with her? A. He did not say. Q. But he said what that contract was? A. Yes, sir."

N. M. Carlisle stated he visited Mr. Dill at his home twice on business, and that on one occasion he heard Dill say that Mrs. Walker was very attentive to him, and "that he did not see how he could get along without her and that he had made a trade with her to come there and take care of him. . . . He just simply got her to come there and stay with him, let him live with them during his life, and he said this: that he could never repay her for the kindness she had shown him, that she had give him while he was there.

"Q. What, if anthing, did he say about paying her for attention under the contract? A. He said he expected her to have that home."

Another witness, Mrs. Lily Simpson, stated that she was frequently at the house of Dill and Mrs. Walker and that she heard Dill say "He had agreed that Mrs. Walker was to have that home place; he was going to give her that at his death.

"Q. Said he had agreed to do that? A. Yes, sir, said nobody was entitled to it more than she was and he intended for her to have it. Q. For what reason was he going to give her that property? A. Well, he said that had been more of a home than he had since his wife died.

Q. Was in compensation for what she was doing for him?
A. Yes, sir."

By other witnesses the value of the property was shown to be about $1,800.00.

From this evidence we are persuaded that there was an agreement between the deceased and Mrs. Walker in substance the same as alleged in the petition. Of course, when the witnesses for the defendant are called all this may be explained away or contradicted, but we are of opinion that there was more than a scintilla of evidence supporting the plaintiff's cause of action and the trial court should have submitted the case to the jury. Mrs. Walker was not related to Dill in any way whatever. The parties were not living together as one family by mutual agreement and for the advantage of all, but, according to appellant's contention, Dill was residing with Mr. and Mrs. Walker for the purpose of obtaining care and attention, board and lodging and not for the mutual advantage of the Walkers except in so far as he promised to compensate them for their care and attention. The rule applied in the case of Armstrong v. Shannon, 177 Ky. 549, and other cases of similar character, is not applicable in all respects to cases of the character of the one now under consideration. The contract relied upon in the Armstrong-Shannon case was one between relatives living together by mutual consent for the advantage of all, while the contract in the case at bar is one between strangers. In a case where a relative lives with another or other relatives as a member of the family by mutual consent, no presumption is to be indulged that the one is to pay, or the other is to receive compensation for board or services, but in a case between strangers quite a different rule is applied. Where a stranger is taken care of, boarded and lodged, a contract to pay for the services, board and lodging will be implied. Here, however, Mrs. Walker contends that she had specific contract with the deceased Dill whereby he was to give or will to her at his death the house and lot in which they all lived, of the value of $2,250.00. Evidence is introduced which tends strongly to support the allegations of the petition and to establish the contract relations between Mrs. Walker and Mr. Dill. Mrs. Walker was not a competent witness nor did she offer to testify. She called a number of witnesses who did not hear her and Dill enter into

the contract but who did hear Dill state the terms of the contract and confirm and ratify it.

In cases of this kind we have frequently held that an action could not be maintained for specific performance because the contract is within the statute of frauds prohibiting the sale or transfer of land by parol; and further that a part performance of a contract, such as the performance of service, the delivery of consideration will not take the contract out of the statute of frauds. Doty's Admr., &c. v. Doty's Guardian, 118 Ky. 204; Grant v. Craigmiles, 1 Bibb 205; Hayden v. McIlvain, 4 Bibb 58; Holtzclaw v. Blackerby, 9 Bush 40.

But holding the statute of frauds not a sword but only a shield, we have frequently written that one who has performed his part of a contract, similar to the one under consideration, and the other party has failed, as in this case, the one performing may recover not the specific property but its value or equivalent. Doty's Admr. v. Doty's Guardian, *supra;* Benge v. Hiatt's Admr., 82 Ky. 666, 6 R. 714, 56 Am. Rep. 912; Stowers v. Hollis, 83 Ky. 544; 7 R. 549; Mercer v. Mercer, 87 Ky. 30, 9 R. 870, 7 S. W. 401, and other cases cited. In the recent case of Duke's Admr. v. Crump, 185 Ky. 325, we said: "While it is true that there is a class of cases holding that for a breach of contract to devise, the measure of recovery is the value of the property agreed to be devised, it will be found that that rule is confined to cases where the benefit to the intestate cannot be measured in money, and there is no way to determine the amount of recovery except by the pecuniary standard fixed by the parties to the contract;" and further that where "the benefit to the intestate could be measured by ascertaining the reasonable value of plaintiff's services, and no resort to the standard fixed by the contract was necessary, then the plaintiff is entitled to recover only the value of the services performed and not the amount fixed by the contract. In other words, in cases in which it is possible to determine from the evidence the reasonable value of the services performed this will be the measure of recovery, but where the thing done or services performed are of such nature as not to admit of a reduction to a monetary value, then the contract made between the parties will be received to fix the value; and in case where lands or other property is agreed to be devised, the value of such property or land will be considered as the

measure of recovery, though the thing itself cannot be recovered nor the contract specifically enforced."

The contention is made that there is not the slightest evidence in the record that the contract was ever accepted by appellant, Mrs. Walker, and on this point no witness specifically testifies that Mrs. Walker accepted the contract; but practically every witness that testified in the case related facts showing that Mrs. Walker had entered upon the performance of the contract, was carrying it out and performing it in detail, at the time of the death of Dill, which was abundantly sufficient to show that she accepted the contract.

Upon a return of the case to the lower court a new trial will be had, and if the evidence upon another trial is similar to that upon the last trial, the court will submit the case to the jury under proper instructions.

Judgment reversed.