## Moore v. Moore's Adm'r.

Oct. 10, 1944.

Sidney Trivette and E. J. Picklesimer for appellant.

P. B. Stratton and W. A. Daugherty for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

The appellant, John W. Moore, is the illegitimate child of Elmer Moore, who died intestate when the appellant was just short of twenty-one years of age, leaving an estate valued at approximately $11,000.

This action was filed by him, by his mother and next friend, Lee Belcher, against his father's administrator, seeking damages in the sum of $15,000 for breach of contract, allegedly made by his father with his mother, shortly after his birth, by which his father, in consideration that his mother would refrain from instituting bastardy proceedings, agreed to support and maintain him and make him his sole heir at law. At the conclusion of the plaintiff's evidence the trial court directed a verdict for the defendant and this appeal follows.

The evidence conclusively established that Elmer Moore was the appellant's father. Lee Belcher, the appellant's mother, was never married. She was the mother of two illegitimate children born before the appellant and three born afterwards. The illegitimate children had six different fathers. Her testimony constitutes the only evidence as to the contract sued upon. In her own words, the agreement between her and Elmer Moore was:

"I told him I intended to take him with a bastardy proceeding in order that the boy might have somebody to go back on and he promised he would keep the child if I wouldn't and would also furnish me as much as he could if I wouldn't prosecute him or take him with a bastardy warrant. He says, 'That is what I am working for is my child. I intend for him to have all I have got any way.' "

She had other talks with Elmer Moore from time to time, in which she says he intimated they were to be married. In one place in her testimony she said: "He said 'I intend for him to have all I have got, that is all the child I have.' " At another time he said to her, after the appellant had married: "I'm going to help him all I can until he gets straightened out." On cross examination her version of the original agreement was: "He said, 'If you won't expose me in court, I'll provide for the child and help you too.' " Elmer Moore did contribute to the support and maintenance of the appellant and a part of the money thus paid was used by the mother for herself. She made little, if any, complaint as to the amounts paid her for the support of herself and the child.

It is well settled in our jurisdiction that a promise by the father to the mother of his illegitimate child to maintain the child and provide for it out of his estate, in consideration of the mother's agreement not to institute bastardy proceedings, is valid and enforceable. Bowling v. Bowling's Adm'r., 222 Ky. 396, 300 S. W. 876; Lewis v. Creech's Adm'r., 162 Ky. 763, 173 S. W. 133. And we have even gone so far as to hold that an agreement making an illegitimate child the sole heir at law of the father, supported by such a consideration, where there was no surviving widow or legitimate children, is not contrary to public policy but is valid and enforceable. Hehr's Adm'r. v. Hehr, 288 Ky. 580, 157 S. W. 2d 111. In the latter case it was said, however, that clear and convincing evidence is required to establish such a contract.

But, while the agreement alleged in the petition is a valid one, in accord with the authorities cited, it appears to us that the evidence tended to establish only an agreement on Elmer Moore's part to support and maintain the appellant and not an agreement to make the appellant his sole heir at law.

It is unnecessary to decide whether the uncorroborated testimony of the appellant's mother was sufficient, in the circumstances, to be deemed of that clear and convincing character of evidence required to establish a contract of this nature since, if it be accepted as true in every particular, it does not prove an agreement to make the appellant sole heir at law or to leave him all of the estate. It is apparent that her testimony tends

only to prove an agreement that Elmer Moore would support and maintain the appellant (which he did), accompanied by a declaration of intention or expectation, but not an agreement on his part, to leave all of his property to the appellant. Her testimony on direct and cross examination, quoted above, as to her agreement with Elmer Moore clearly reveals that such was the effect of the agreement. When the agreement was made, and at times thereafter, he declared his intention or expectation of leaving his property to the appellant but the evidence falls short of establishing, or tending to establish, an agreement or contract on his part to do other than provide for the support of the child. This is the conclusion from the evidence reached by the trial court and it was manifestly correct.

Affirmed.