## CAUDILL v. CAUDILL.

Court of Appeals of Kentucky.
Dec. 5, 1952.

Rehearing Denied May 22, 1953.

Francis M. Burke and Francis D. Burke, Pikeville, for appellant.

Sanders & Hyden, Pikeville, for appellee.

MOREMEN, Justice.

This is an appeal from a judgment of the Pike Circuit Court whereby appellee, Linda Caudill, illegitimate daughter of Sam Caudill, deceased, was awarded a sum equal to one-half of the net value of decedent's estate. Appellant assigns as grounds for reversal: (a) the petition does not state a cause of action; (b) incompetent evidence was permitted to be introduced at the trial; (c) appellant's motion for a directed verdict should have been sustained and the verdict. was not supported by the evidence; and (d) the instructions were erroneous.

In 1944, Sam Caudill was a resident of Pikeville. He was the father of one son, John Caudill, the appellant. In that year, Sara Jane Perdue, widow, and mother of appellee, Linda Caudill, was staying at the home of a tourist court operator on Shelby Creek in Pike County. She had known Sam Caudill for a good many years and had kept company with him. In the fall of 1944, on a number of occasions, they spent the night together at the tourist court. She became pregnant.

Sara Perdue testified that about three months after conception and when she was sure that she was pregnant, she told Sam Caudill that he must provide for the child; that she could not work because of her condition, and, if he did not, she would be compelled to sue him. She said: "I had come to the place where I had to have support for the child, and he promised me if I would not sue him that he would provide for the child, and we made an agreement that if I would not sue him—he knew the child was his own, there was never any question about that—he would provide and take care of it and it would be his heir just the same as Johnny Red." She also testified concerning other occasions when the matter was discussed and the promise was reiterated.

On February 14, 1945, she stored her furniture and other household property— in the name of Sam Caudill—at the Pinson Transfer and Storage Company of Pikeville. On March 26, Sam Caudill purchased a home on Coal Run and some time later the household goods were moved into it.

In March 1945, Sara Perdue went to Ripley, West Virginia, where she remained with her sister until Linda Caudill was born on June 18. Two weeks later, Sam Caudill went to Ripley and brought Sara Perdue and his child back to Coal Run where they lived as man and wife until he died, intestate, on May 25, 1949, without making provision for appellee to share in his estate.

The administrator of the estate of Sam Caudill refused to pay the claim of appellee under the contract her mother claimed to have made for her benefit, and this litigation resulted.

In connection with the contention that the petition is defective, appellant points out two alleged deficiencies: (1) that the petition is ambiguous and, in the main, states conclusions of the pleader rather than facts and no clear-cut allegation of facts was made from which it might be said that Sam Caudill made an agreement with appellee's mother in consideration of her forbearing institution of

bastardy proceedings. The petition is sufficiently full and we believe this excerpt is sufficient to show that a cause of action was alleged, to-wit:

"* * * that Sara Jane Perdue was a single and unmarried woman at the time Linda Jane Caudill was begotten and born and that within a few months before and after the birth of the said Linda Jane Caudill, Sara Jane Perdue, mother of Linda Jane Caudill threatened to institute bastardy proceedings against Sam Caudill, deceased, to compel him to support the said Linda Jane Caudill, and that the said Sara Jane Perdue as the mother of the said Linda Jane Caudill, and Sam Caudill, deceased, entered into an agreement by which the said Sam Caudill agreed to contribute to the support of the said Linda Jane Caudill, to give the plaintiff, Linda Jane Caudill his name and to recognize and support said Linda Jane Caudill in the same manner as if it had been born of lawful wedlock and that the said Sam Caudill entered into an agreement with Sara Jane Perdue by which the said Sam Caudill agreed to make the said Linda Jane Caudill one of his heirs at law and for said Linda Jane Caudill to share equally in his estate at his death with his other child, John E. Caudill, if the said Sara Jane Perdue would refrain from instituting bastardy proceedings against the said Sam Caudill, deceased, he would by deed or will convey certain real estate in Pike County, Kentucky, unto Linda Jane Caudill which he obtained from Paul and Rushia Jones on the 26th day of March, 1945, as recorded in Deed Book 250, at page 1 of the Pike County Court Clerk's records. * *"

Appellant insists that the petition was also fatally defective because it failed to allege that Sara Perdue was a resident of Kentucky at the time the child was begotten or born, and reliance is had upon Commonwealth v. Adkins, 169 Ky. 487, 184 S.W. 372. The case involved a direct proceeding in the name of the Com-

monwealth for the use and benefit of the mother and her bastard child under what is now Chapter 406 of Kentucky Revised Statutes which sets out jurisdictional requirements which must be followed. The proceedings in this case are not under this chapter and we are concerned only with the existence and validity of an alleged contract, not with the venue of an action which may have been brought if the contract had not been made between the parties.

■ Under the second assignment of error, appellant contends that counsel was permitted to lead the principal witness and that the answers were conclusions and not statements of facts. In the brief he complains specifically of the inquiries and answers which are numbered 41 and 43 in the following colloquy:

"41—Did he say he would make title to the child? (Objected to by the defendant. Overruled by the court, to which the defendant excepted.) A— Yes sir, he did. (The objection is now sustained by the court, and the court admonished the jury not to consider the answer, to which plaintiff excepted.)

42—What did he say about that particular property, Mrs. Perdue? A— He says, I will buy the child a home and deed it to her or will it to her at my death and she will share as Johnny Red.

43—Now in consideration of that promise did you not bring bastardy proceedings? (Objected to by the defendant. Overruled by the court, to which the defendant excepted.) A— No, I didn't, and we lived together as man and wife until he died."

It may be noted that the court sustained an objection to the answer of 41 and admonished the jury not to consider it. Question 43 is suggestive of an answer and is improperly phrased, but we do not consider it prejudicial. Sara Perdue was questioned many times on both direct and cross examination concerning this point, and her answers were forthright and appeared to be clothed in the garments of truth. In Blankenship v. Commonwealth, 234 Ky. 531, 28 S.W.2d 774, 775, an able discussion of this question may be found. It was said:

"The Civil Code defines a leading question as one that suggests to the witness the answer which the examining party desires. Section 595. They are forbidden on direct examination except under special circumstances making it appear that the interests of justice require it. The practice is not regarded as reversible error in any case if the answer of the witness bears the impress of truth and demonstrates that the examiner's words were not put in the mouth of the witness. Wise v. Foote, 81 Ky. 10. Cf. Western Union Telegraph Co. v. Teague, 134 Ky. 601, 121 S.W. 484. When testimony is competent, although elicited by leading questions, its admission will not be deemed an error, unless the forbidden practice was so persistently indulged as to manifest a disregard of the law on the part of counsel and an abuse of the discretion on the part of the trial court. Hall & Little v. Commonwealth, 196 Ky. 167, 244 S.W. 425."

While it is true that some of the questions were leading, the court often sustained objections to them, and we are of opinion that the witness's testimony was not changed even in the slightest degree by the faulty form of the questions.

■ Appellant next contends that the uncorroborated testimony of Sara Perdue was not sufficient in the circumstances to establish a contract and that the court should have either directed a verdict for appellant or should have set aside the verdict because it was not supported by the evidence. We think this argument overlooks the fact that there was other evidence besides the testimony of the witness, that Sam Caudill had agreed to support the child. The circumstances of the case generally indicate that he accepted the child fully, gave her his surname, provided a home for her, claimed her as a tax exemption, and in many ways

demonstrated that he felt as obligated to her as if she had been a legitimate child in fact. However, we are not aware of any rule of law that provides that a contract may not be proven by oral testimony alone. The very intimacy of such an agreement suggests that the parties did not desire to have it highly publicized or consummated in the presence of many witnesses. We think from all the facts proven and from the legitimate inferences that might be drawn from those facts, the jury was justified in finding that such an agreement did exist.

Appellant complains finally that the instructions were erroneous in that it was assumed that at the time of the alleged agreement Sara Perdue had the right to bring a bastardy action; that appellant in his answer had raised the question of whether there was consideration for the promise, and this question of consideration should have been submitted. The instruction told the jury in effect that Sam Caudill was the father of Linda Caudill (which was conclusively proved) and if the jury believed that within three years after her birth Sam Caudill entered into a contract with Sara Perdue wherein he would take such measures as would give Linda Caudill an equal share in his estate with John Caudill and if the jury further believed that this agreement was made for the purpose of preventing the mother from instituting bastardy proceedings and the mother relied upon such contract and thereby refrained from instituting such proceedings, then the law was for appellee. This instruction does not require the jury to determine whether such a promise by the father does in law constitute sufficient legal consideration for the contract. That question was one for the court to determine. It has often been held in this state that such a promise is sufficient consideration. In Moore v. Moore's Adm'r, 298 Ky. 312, 182 S.W.2d 886, 887, this court said:

"It is well settled in our jurisdiction that a promise by the father to the mother of his illegitimate child to maintain the child and provide for it out of his estate, in consideration of the mother's agreement not to institute bastardy proceedings, is valid and enforceable. Bowling v. Bowling's Adm'r, 222 Ky. 396, 300 S.W. 876; Lewis v. Creech's Adm'r, 162 Ky. 763, 173 S.W. 133."

It is insisted that another instruction failed to submit a measure of recovery. This instruction reads:

"If you find for the plaintiff under instruction No. 1, you will find that she is entitled to one-half the estate of Sam Caudill, deceased, after payment of funeral expenses, debts and costs of administration."

We believe this instruction correct because at the time of the trial, under the condition of the estate, it was impossible to fix the exact amount of the value of the estate. There was ample proof in the record to show that Sam Caudill had promised that Linda Caudill would share equally with his other child.

We find no prejudicial error in the record and the judgment is affirmed.