**John W. MILLER et al., etc., Appellants,**

**v.**

**Rachel Gale MILLER, by her Statutory Guardian, Flonnie Harmon Miller, Appellee.**

Court of Appeals of Kentucky.

May 20, 1960.

Ruben G. Hicks, R. B. Bertram, Monticello, for appellant.

Leonard S. Stephens, G. W. Hatfield, Jr., Whitley City, for appellee.

PALMORE, Judge.

This is an action brought by the guardian of an illegitimate child to enforce a promise allegedly made by the father (now deceased) to will certain real and personal property to the child. The original complaint, asserted only against the father's heirs at law, being three legitimate children, demanded specific performance or, alternatively, recovery of damages in the amount of $55,000 as the value of the property embraced within the alleged promise. Upon intervention by the administrator of the decedent's estate as a party defendant the complaint was amended to include him in the demand for monetary recovery.

Following trial without a jury the court found that Walter Miller, the putative father of plaintiff's ward, Rachel Gale Miller, had in fact promised the child's mother, Flonnie Harmon, to make a will leaving the property in question to the little girl and, if he should be living when she attained the age of 18 years, then deed the property to her; that the consideration for this promise was the mother's forbearance from the institution of a threatened bastardy proceeding against him; that this was all of the consideration, there being no agreement on the part of the mother to continue or resume the illicit relationship theretofore existing between her and the father; that the decedent, Miller, breached the contract by failing to execute a will; and that the property covered by the agreement had a fair market value of $32,750. Judgment was thereupon entered against the administrator in the amount of $32,750

and the complaint was dismissed as to the heirs, the three legitimate children. Though technically the judgment was in their favor, the heirs appeal. The administrator, against whom the money judgment was rendered, does not appeal.

The first question presented is whether the heirs can maintain an appeal from a judgment theoretically in their favor.

■ KRS 396.060 makes heirs and devisees liable for debts of the ancestor to the extent of the assets they have received from his estate and provides further that they may be joined as defendants in any action against the personal representative. CR 73.01 provides that "parties interested" in a judgment may appeal from it. In addition, however, to having a direct and substantial interest the appealing party must be "aggrieved" by the judgment. 2 Am.Jur. 943 (Appeal and Error, § 152); 4 C.J.S. Appeal and Error § 183, p. 554 et seq. It follows, therefore, that as a general rule a party may not appeal from a judgment in his own favor. 4 C.J.S. Appeal and Error § 183 b(3), p. 565; Light v. Miller, 1920, 187 Ky. 57, 218 S.W. 307; Morrison v. Bartlett, 1942, 292 Ky. 530, 166 S.W.2d 989.

The question of whether an heir at law is permitted to appeal from a judgment against the personal representative seems to have received a variety of treatment as it has arisen in different jurisdictions. See 2 Am.Jur. 955 (Appeal and Error, § 171), and 4 C.J.S. Appeal and Error § 195, p. 589 et seq. However, it is unnecessary to resort to precedent from other jurisdictions when the sensible answer to the question is as plain as it is here. It is recognized that in an administrator's action for wrongful death of an infant recovery is precluded by the contributory negligence of the parents, because they are the real parties in interest. Wood v. Dennison's Adm'r, Ky. 1954, 273 S.W.2d 374, and cases cited in West's Kentucky Digest, Death, ⊜24. The appellants are the heirs and distributees of Walter Miller's estate. If the tax-

payers have a "real and direct interest" in a controversy involving their governmental unit, as was held in Cooper v. Kentuckian Citizen, Ky.1953, 258 S.W.2d 695, a fortiori the distributees have a real and direct interest in a controversy reaching the personal estate of their decedent, and the heirs likewise have such an interest where the record shows, as it does in this case, that the personal assets may be insufficient to pay the judgment in addition to the other claims against the estate. Their interests in the matter adjudged being direct and substantial, they are necessarily aggrieved by any judgment adverse to the administrator and may appeal from it.

■ The contesting parties on this appeal are in substantial agreement as to the principles of law applicable to the merits of the case. In summary, they are:

(1) An oral promise by the father to the unwed mother to provide for an illegitimate child out of his estate in consideration of the mother's agreement not to institute threatened bastardy proceedings, which agreement has been fully performed on her part, is enforceable. Caudill v. Caudill, Ky.1952, 257 S.W.2d 557; Smith v. Wagers' Adm'rs, 1931, 238 Ky. 609, 38 S.W.2d 685; Bowling v. Bowling's Adm'r, 1927, 222 Ky. 396, 300 S.W. 876; Clarke v. McFarland's Ex'rs, 1837, 5 Dana 45, 35 Ky. 45.

(2) Such a contract may not be specifically enforced as to real estate, but the beneficiary is entitled to recover damages measured by the value of the property agreed to be devised. Doty's Adm'rs v. Doty's Guardian, 1904, 118 Ky. 204, 80 S.W. 803, 26 Ky.Law Rep. 63, 2 L.R.A., N.S., 713, 4 Ann.Cas. 1064, and cases cited infra in this opinion.

(3) The contract must be established by clear and convincing proof. Napier v. Hodge, Ky.1956, 293 S.W.2d 870.

The contention is that the findings of fact and judgment of the trial court (a) were not supported by clear and convincing

proof as to the existence of the contract and (b) were clearly erroneous with respect to the value of $32,750 placed on the property embraced within the alleged promise.

The principal testimony establishing the agreement was given by the child's mother, who is her guardian and is the appellee. She was a competent witness. See Doty's Adm'rs v. Doty's·Guardian, 1904, 118 Ky. 204, 80 S.W. 803, 26 Ky.Law Rep. 63, 2 L.R.A.,N.S., 713, 4 Ann.Cas. 1064. She had lived with Walter Miller, a divorced man, nearly continuously from 1949 until his death on March 20, 1957. The child was born on July 20, 1954. There is no question as to the paternity of the child, as Miller and Flonnie Harmon lived together and held themselves out to the public as man and wife all during this period and Miller freely recognized the baby as his child. In July of 1956 a rift developed and Flonnie went to the home of her father and mother, threatening to institute a bastardy proceeding against Miller in order to secure the future support of the child. She made this threat to Miller, who had followed her, at the home of her parents in the evening of the day of her departure from Miller's home. Miller came back early the next morning, begging her to desist, and it was then that he is said to have promised that if Flonnie would not carry out her announced purpose he would make a will leaving the little girl all of his property on the west side of U. S. Highway 27 at Strunk, where he lived and had property, and if he should still be living at the time the child reached the age of 18 years he would then deed that property to her.

At the time of the alleged agreement Miller operated a store on the east side of U. S. Highway 27 and was constructing a restaurant, truck stop and tourist court of six cabins on 3 or 4 acres of land owned by him on the west side of the road. There was testimony that he had remarked on one or more occasions that he was building the restaurant for the baby. One witness said she had heard him say that he was making a will for the child and was going to deed the place to her when she was 18. Another witness, N. B. Perkins, land agent for the Stearns Coal and Lumber Company, testified that Miller came to his home with Flonnie and the baby and asked him to prepare a will leaving his restaurant property to the child. This conversation was corroborated by Mrs. Perkins. Perkins testified also that some 60 days later, on the porch of Miller's store at Strunk, Miller asked him if he had prepared the will, which he had not (and never did), and, pointing across to the west side of Highway 27, "said he wanted the baby to have all that." It was shown that Miller had executed a written lease in favor of Norman Duncan for the operation of the restaurant and that the lease gave Duncan an option to extend its term "until my youngest child, now living, is 18 years old."

Clearly the evidence proved a definite intent and purpose on Miller's part to make a will leaving the property on the west side of the road to the child. An intention, however, no matter how widely announced, is not a contract. See Moore v. Moore's Adm'r, 1944, 298 Ky. 312, 182 S.W. 2d 886, 887. That Miller's ·announced purpose of making the will for the child emanated from a contract to that effect rests entirely on the testimony of the mother. Nevertheless, it gave substantial corroboration to the existence of such a contract. The case is distinguishable from Moore v. Moore's Adm'r, supra, where the strongest statement attributed to the father was, "I intend for him to have all I have got anyway." Here there is evidence of a specific promise, not a mere statement of intention, and since there was ample corroboration to make a clear and convincing case it is unnecessary to decide the question of whether such a case could be made by the uncorroborated testimony of the mother alone. See Caudill v. Caudill, Ky.1952, 257 S.W.2d 557. Had the appellee read the decisions of this court before testifying she could scarcely have displayed greater skill in bringing her case within their scope. We· have no

alternative but to agree with the chancellor: "This is about as clearly proven case of oral contract of this kind you ever run into."

It is suggested by appellant that since Miller was already supporting the child at the time of the alleged agreement the only possible consideration was the fear of exposure, which alone will not support such a promise. Smith v. Wagers' Adm'rs, 1931, 238 Ky. 609, 38 S.W.2d 685. This argument overlooks the fact that when the agreement was made the mother had left Miller and, presumably, intended the bastardy proceeding to enforce his obligation to support the child without resort to any further voluntary generosity on his part. Assuming, moreover, as we must assume in the absence of evidence to the contrary, that the mother was acting in good faith in threatening to avail her child of the security obtainable through a bastardy proceeding, her relinquishment of the remedy would not necessarily be of less force, as a supporting consideration for a promise by the father, merely because he had been supporting the child already.

The witnesses who testified for the appellee in estimating the value of the real and personal property on the west side of Highway 27 all had bought, sold and owned real estate in the county and considered themselves to be generally informed as to land values in the vicinity. They appraised the property in question as being between $46,000 and $60,000 in value. Witnesses for appellants placed the value as low as $12,000 to $15,000. The only reasonably comparable property in the area is situated a mile or so away and sold 3 or 4 years prior to the trial for $28,500. Though none of the witnesses were sufficiently well qualified that their opinions could be accepted without misgivings, they were competent to testify. See Damron v. Bartley, 1946, 302 Ky. 83, 194 S.W.2d 73. In striking somewhat of a median between the high and the low estimates after himself viewing the property, it cannot be said that the chancellor acted erroneously.

Applying the principles of law heretofore stated in this opinion, the case is at an end. But we cannot leave it here without the feeling that something is wrong, that somewhere the law has strayed and is in need of correction. Though eviscerated and stripped of its essential vitality in this type of case, the statute of frauds yet is left neither dead nor alive. To the extent that the contract may be proved and full recovery had, the statute is useless and dead. To the extent, however, that because of it one may not have specific performance, it is a living oddity. The result, in cases where recovery is to be measured by the monetary value of the property involved, is to substitute the uncertain for the certain, the estimated value for the thing itself. Herein lies the real complaint of the appellants in this case. At the very best, opinions of witnesses as to the value of property amount to permissive guesses. Therefore, the judgment of the trial court cannot amount to more than an educated guess. If the guess is wrong, one party or the other will suffer, all of which is unnecessary if the property itself is available for transfer.

It is elementary that although a party may not recover on an oral promise to devise real estate as compensation for services to be rendered he may recover the value of the services actually rendered on a quantum meruit basis. Pryor v. York's Ex'r, Ky.1957, 305 S.W.2d 775; Vest v. Scearce's Adm'r, 1950, 312 Ky. 181, 226 S.W.2d 942. If the "quantum" cannot be readily measured in money, then it is said that the "contract" may be resorted to, not as the measure of damages for failing to convey the property, but as constituting the standard of value established by the promissor himself. Benge v. Hiatt's Adm'r, 1885, 82 Ky. 666, 6 Ky.Law Rep. 714, 56 Am.Rep. 912; Doty's Adm'rs v. Doty's Guardian, 1904, 118 Ky. 204, 80 S.W. 803, 26 Ky.Law Rep. 63, 2 L.R.A.,N.S., 713, 4 Ann.Cas. 1064; Walker v. Dill's Adm'r, 1920, 186 Ky. 638, 218 S.W. 247; Waters v. Cline, 1905, 121 Ky. 611, 85 S.W. 209, 750, 27 Ky.Law Rep. 479, 586;

Hinton v. Hinton's Ex'r, 1931, 239 Ky. 664, 40 S.W.2d 296; Jordan's Adm'x v. Burton, 1939, 281 Ky. 309, 135 S.W.2d 684; Carpenter v. Carpenter, 1945, 299 Ky. 738, 187 S.W.2d 282. It is to be noted that in Benge v. Hiatt's Adm'r, the putative father of this line of cases (though the honor may belong to Berry v. Graddy, 58 Ky. 553), the property had been sold by the heirs and was not available for transfer.

Where the statute of frauds is so circumvented as to allow proof of the terms of an oral contract and recovery of the value of the property agreed to be devised or conveyed, then to say that "though the thing itself cannot be recovered nor the contract specifically enforced" (Walker v. Dill's Adm'r, supra [1920, 186 Ky. 638, 218 S.W. 249]) because the statute is still applicable is pure sophistry. As said in Hehr's Adm'r v. Hehr, 1941, 288 Ky. 580, 157 S.W.2d 111, 113: "Such measure of recovery for breach of contract is something of a legal fiction for it avoids the transfer or payment of the expressed consideration." Originating in Victorian circumlocution, the fiction does not measure up to the practical requirements of justice and common sense.

The sacrifice of the objectives underlying the statute of frauds in favor of a benevolent solicitude for those who would suffer irreparable hardship in the class of cases exemplified by the one before us may be of debatable wisdom, but it has become so firmly entrenched as a part of the law that we are not disposed to overturn it. To the extent, however, that it has resulted in a hybrid rule calling for an artificial measure of recovery in lieu of the real thing it clearly has neither logical nor reasonable basis.

Once the right of recovery is a foregone conclusion, as it is under the findings of the trial court in this case, then the only complaint that can be made is that the amount of recovery is wrong. On the matter of damages that is the real argument made by the appellants. If the transfer of the property itself be decreed they cannot be prejudiced, nor can the appellee, who

demanded it in the first place. Therefore, we must hold that in adjudging monetary recovery where the property itself was available for transfer the decree was in error.

Upon the remand of this case, and upon compliance with CR 17.03, if the property is still vested in the appellants its transfer to appellee's ward will be decreed in lieu of a money judgment against the personal representative.

The cause is affirmed except as to the measure and mode of recovery, with respect to which it is reversed and remanded for further proceedings consistent with this opinion.